**FILED**

JUL - 2 2015

**Clerk, U.S. District and Bankruptcy Courts**

## UNITED STATES DISTRICT COURT
District of Columbia
333 Constitution Avenue
Washington, DC  20001

In the matter of

MARIANNE LISENKO          Petitioner
1221 M Street NW, #834
Washington, DC  20005

and

Case: 1:15-cv-01048  (C Deck)
Assigned To : Walton, Reggie B.
Assign. Date : 7/2/2015
Description: Admin. Agency Review

Attorney General of the United States
LORETTA  LYNCH
950 Pennsylvania Ave., NW
Washington , DC 20530

Acting US Attorney for the District of Columbia
VINCENT H. COHEN
555 4th Street NW
Washington, DC 20530

Secretary of Homeland Security
JEH JOHNSON
Washington DC 20528          Respondents

## COMPLAINT

## FIRST AMENDMENT REQUEST  FOR RELIEF

I, the petitioner  Marianne Lisenko, come to this court under §1332, Title 28 of US Code
(jurisdiction under US Constitution Art.3(2), laws and treaties) and under the First Amendment
to the US Constitution (right to petition government for remedy of grievance)  in order to begin
to  resolve a controversy of national and international import and  to begin to  expose the
unacceptable contradictions, the inconsistencies and absurdities in  US  immigration  statutes and
caselaw, in regulations, rules, forms and  procedures which  result in systemic and systematic

**RECEIVED**

JUL - 2 2015

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

abuses of those procedures and in abuse of discretion. This, in turn, results in an unknown (to me) number of undocumented **eligible** US residents and in other forms of undocumented migration. The US Citizenship and Immigration Service operates largely in secrecy and access to decisions at regional centers is denied. I do not believe there is adequate oversight of USCIS operations by Congress, the Inspector General or any other agency. Under the Patriot Act, the 1946 Administrative Procedures Act (60 Stat 237), etc, USCIS is essentially exempt from true accountability on security or other foreigner-related grounds. But arbitrary, capricious abuse of discretion and procedure, in the absence of UNIFORMITY, consistency and clarity, I trust this Court has the discretion to remedy.

**1.**

Proof of the above-stated fact is my 12 year record of self-petitioning as a mistreated immigrant wife and a political refugee whereby I had objected to the different forms of abuse of procedure. I remain **ignored and ridiculed** by USCIS, by the Adminstrative Appeals Office, the Board of Immigration Appeals, by the numerous elected officials in Congress to whom I had written and who's offices I had visited, yet my unique life story and experiences present, I believe, novel arguments of a widespread nature never before addressed in a North American or other court. Specifically, the need to promote the unifying English language, as opposed to the conflict-producing exclusionary premise of the Charter of the French language, which I opposed, and for which I was persecuted and driven to leave Canada.

**2.**

The invisible occult and other psychic or electronic methods of persecution and harassment with the intention to fatally harm someone and as a method of intimidation and exclusion is the other aspect of my prayers for help to US authorities. I have now been **invisibly** robbed numerous times - IDs, bank and store cards, keys, glasses, cell phones, legal papers, my returned purse with expired IDs and tortured tooth, my returned LET3BE license plate, etc. I have been **invisibly** bruised, scratched, pinpricked, shocked, tripped, choked, tasered, "bugged" and "miced". Fortunately, those things did not happen all at once, the consequences were minor, and it is difficult, or impossible to prove who is behind what can only be described as systematic harassment. It is highly frustrating, irritating and suspicion-provoking not only for me, but for society at large. I have been denied access to security videos for dates when I suspected

unauthorized entries were made into my apartment.

**3.**

Evidence of some of those incidents, as well as the important issue of land registry abuse, or fraud, and the denial of my property rights, as a form of persecution in Quebec, was excluded in the **false transcript of the asylum "hearing"** that **I DID NOT have** in Boston Immigration Court (a hearing was set for Dec.12,2007, but a negative decision with trivialized commentary was sent in September, 2007). It is difficult not to conclude that hostile bigoted officials, and others, on both sides of the US-Quebec-Canada border are interfering with the process of fair and reasonable discretionary decision-making to the point where Quebec federal officials have denied me a subsistence level pension, possibly with the express hope that I will not survive the continuing invisible psychic-occult and bureaucratic-illegal methods of harassment which amount to intolerable persecution and degrading treatment for trying to do what is right.

**4.**

The fact that asylum and refugee hearings under the 1968 Protocol to the Refugee Convention and under the Convention Against Torture are conducted without congressional ratification of said international conventions is another reason why there was an invalid sham approach to my Immigration Court proceedings.

**5.**

I was born stateless in Belgium to my displaced parents from the Soviet Union – *"victims of nazi persecution"* during WW2, and I do fall within the definition of a refugee as stated by the **Constitution of the International Refugee Organization** which **was adopted** by Congress in 1948, the year of my birth, (62 STAT 3049). I am a *"person outside of country of nationality"* (Belgium by birth and Canada by naturalization) *"subsequent to world war two."* I was in those countries because of WW2 and because of my rejection of the Soviet communist regime – and I am *"unable to avail myself of that [either] country's protection".*

**6.**

As mentioned, I have been denied a subsistence level pension and all my previous attempts to remedy grievances in Quebec and Ontario courts were quickly rejected... In April of this year

my husband filed a claim, through his lawyers, for ownership of the family residence that I paid
the mortgage on and that he has lived in rent-free for the last 12 years. Quebec Superior Court in
St.Hyacinthe did not send me a summons or any notice of hearing. My motion for English
language filings does not appear to have been docketed. I could not subscribe to Quebec's
court documents filing system (Soquij) and my return receipt for the registered mailing to the
court did not arrive. Postal delays, non-deliveries or unjustified return of items is another
difficult to remedy form of discriminatory harassment that I have faced in Canada and in the US.

**7.**

A lady at the Embassy of Belgium would not even look at a translation of an official copy-
extract of my Belgian birth certificate, nor would the Embassy, she said, certify a
professional's translation. The DC Department of Motor Vehicles will not accept as "valid"
proof of my identity the expired non-driver's ID they previously issued on the basis of my
"indefinitely pending" status of a registered alien with a US social security card.

**8.**

My last two attempts to re-open appeals demonstrate the arbitrary absurdity that immigration
rule-makers and decision-makers can engage in. (In Kerry v Din, USSC #13-1402, Justice
Kennedy uses the term "unbridled discretion", p.5) A submission to the Board of Immigration
Appeals and copies to the Department of Homeland Security and the Department of Justice, with
the **Fee Waiver Request Form**, was returned with a demand for payment of the $110 filing fee.
The Vermont USCIS had previously waived the fee requirement, though instead of forwarding
an earlier submission to the Administrative Appeals Office (AAO), they sent the submission to a
lockbox facility in Phoenix, Arizona. Unnamed officials in Arizona returned that appeal with a
demand for payment of the $635 fee. In both incidents the forms and instructions are
misleading about where to file an appeal, and nothing is mentioned about a lockbox facility for
filing of appeals. The question of the statutory validity of the Adminstrative Appeals Office , the
gouging constantly increasing fees, the unconscionable want of judicial review on an application
to adjust to status, the instruction to send an appeal to the same people who already rejected
one or more applications, then a deviation from that instruction too – these are clearly

unacceptable procedural abuses. (The text of the Motion to Re-open to the Adminstrative Appeals Office is part of the exhibits to the Submission-Appeal to the Board of Immigration, hereby included as Exhibit 1).

**9.**

It was a degrading gesture of ridicule to ask for payment of a fee that the Vermont USCIS waived and the DC Superior and Appeals Courts waived in my petition for alimony, especially considering the fact that **I have been forced into extreme financial poverty** by the courts who supported my Quebec husband's "immunity" and also by USCIS officials who maliciously denied me the 1-year **temporary** employment authorizations that I am eligible for and for which I had paid when I was able to and which I would have been able to pay. The Vermont USCIS waived the exorbitant fee of $380 for my last application for employment authorization but after six months no document has been received, so **why pretend there is a real fee waiver or a fair and legal process**?

**10.**

In light of the cruelties still happening to women and minorities , both in North America and around the World, it is especially egregious that in order to qualify under the Violence Against Women Act for US status, only women who have been subjected to "extreme cruelty" need apply. Actually, that implies **nobody should**, because the result of "extreme cruelty" is death or permanent disability. Under the US Torture Victim Protection Act a standard of "severe cruelty" is appled and it is usually in regard to men. USCIS officials have the discretion to stretch the definition of extreme cruelty to include or exclude anything they want depending on several other criteria, financial self-sufficiency and employability or self-employment being the most important ones. (I repeat: I would be and should be financially secure. My present circumstance of extreme financial poverty is partially the result of procedural abuse by USCIS.)

**11.**

Abusive procedure and abuse of authority also happens when a case is suddenly declared abandoned because postal or other companies did not deliver mail, or when a lower level official makes a decision he or she is not authorized to make, or when officials do not put their names on correspondence or refuse to give it when asked. I did not receive notices of abandonment

but from Sept.20, 2005, till May, 2014, the USCIS website kept stating that my I-290 appeal to the AAO (the 2005 form stated 'Commissioner') under the Violence Against Women Act was approved and a Notice of Approval with instructions was sent to me. I did not receive anything. Finally, in 2014, I sent a FOIA request to the National Records Center. They sent a blocked copy of that Notice but only after three requests. The Washington AAO did not decide my appeal. Paul Novak wrote the first rejection letter and the second one but there was no official Notice.

**12.**

Abuse of discretion has been happening because the evidence about Quebec and my experiences is credible and known but not publicized, because Quebec has wealth and political influence and I, an immigrant woman, do not. It was unreasonable not to acknowledge the cumulative nature of all my previous applications and evidence and now to prevent the introduction of new evidence and the re-opening of the I-360 application with the Board of Immigration Appeals. They too write misleading and changing instructions about where to file an appeal.

### Conclusion

It is a common law principle that when laws or rules are ambiguous, inconsistent, obfuscating or deliberately misleading and contradictory, favor must be given to the aggrieved party. It is common knowledge which has been stated by the President and by numerous US politicians that "the US immigration system is broken". If Congress cannot, or does not want to, remedy the situation, it is the duty of the Court and the Executive branch to do so. This was also acknowledged by the Justices of the US Supreme Court in the recent case of Zivotofsky v Kerry (USSC No.13-628, p.6) when they agreed that "congressional inertia, indifference or quiescence" may invite the exercise of executive power. I believe this includes the writing of clear immigration laws, rules, forms and instructions. If the tax laws can be written in a clear and consistent manner, however lengthy or unfair, and they involve far more complex financial calculations and situations, then certainly immigration laws and rules can be written clearly.

### Relief requested

On the basis of all the above, on the basis of my de facto statelessness, my want of a valid official document, my inability to apply for available work or to freely travel, on the basis

of the fact that I have suffered irreparable emotional, moral and financial injury from **administrative malpractice -**

**A)**     I pray the Court will instruct the Vermont USCIS to issue the **temporary** employment authorization document that I have applied for (I-765) as a matter of reasonable discretion under the last 2013 reauthorization of the Violence Against Women Act and under the first one adopted in 1994 within the Violent Crime and Law Enforcement Act (108 Stat 1953). Those statutes do not specify a " US citizen-spouse rule" or the "extreme cruelty" standard.

**B)**     I pray that the Respondents will not proceed with AT WILL SELECTIVE JUSTICE with dismissive "want of jurisdiction', "subject matter", "standing" , etc., motions, but that given the facially obvious abuses and misleading and/or willy-nilly changing rules, instructions in immigration forms and manuals, the mishandling of fee waiver requests, the abuse of discretionary decision-making power by lower level officials - they will take an expeditious cooperative approach in order to finalize my case. There is no genuine issue of law to decide with a trial because the law and the rules are inconsistent and discretionary, and/or they exempt officials from accountability.

**C)**     I pray for instructions regarding the fair resolution of my I-360, I-130 and I-485 applications and for any other relief that the court deems necessary.

D)     In the alternative, I pray for uniform and consistent instructions in regard to Paragraph 310.1(a) of the Code of Federal Regulations which "confers sole [administrative] authority to naturalize persons as citizens of the United States …upon the Attorney General" (excerpt attached ).

*June 30, 2015*                    *Marianne Lisenko*

                                                 *202 - 210 - 2214*

**Annexed:**

-Exhibit 1/ returned 68- page brief SUBMISSION-APPEAL OF MARIANNE LISENKO to the Board of Immigration Appeals, dated May 19, 2015

-Application to Proceed in *forma pauperis* (28 USC 1915) and Order.

-Request for Service of Complaint and Summons by a US "Marshal or Someone Specially Appointed" (Rule 4(a)(3), FRCP)                    7 of 8

## DECLARATION

I, Marianne Lisenko, declare under penalty of perjury that all the foregoing is true and correct.

Executed on June 30, 2015

MARIANNE LISENKO _____

1221 M Street NW, #834
Washington, DC, 20005
202-210-2214

# ANNEX

## to

# COMPLAINT

1. Excerpt from Code of Federal Regulations

2. Ridiculing instruction from Board of Immigration Appeals (BIA)

3. Stamped and returned submission-appeal to BIA

ELECTRONIC CODE OF FEDERAL REGULATIONS

e-CFR data is current as of June 25, 2015

Title 8 → Chapter I → Subchapter C → Part 310

Title 8: Aliens and Nationality

## PART 310—NATURALIZATION AUTHORITY

### Contents

§310.1  Administrative naturalization authority.
§310.2  Jurisdiction to accept applications for naturalization.
§310.3  Administration of the oath of allegiance.
§310.4  Judicial naturalization authority and withdrawal of petitions.
§310.5  Judicial review.

AUTHORITY: 8 U.S.C. 1103, 1421, 1443, 1447, 1448; 8 CFR 2.

SOURCE: 56 FR 50480, Oct. 7, 1991, unless otherwise noted.

⬆ Back to Top

### §310.1  Administrative naturalization authority.



(a) *Attorney General.* Commencing October 1, 1991, section 310 of the Act confers the sole authority to naturalize persons as citizens of the United States upon the Attorney General.

(b) *Commissioner of the Immigration and Naturalization Service.* Pursuant to §2.1 of this chapter, the Commissioner of the Immigration and Naturalization Service is authorized to perform such acts as are necessary and proper to implement the Attorney General's authority under the provisions of section 310 of the Act.

⬆ Back to Top

### §310.2  Jurisdiction to accept applications for naturalization.

USCIS shall accept an application for naturalization from an applicant who is subject to a continuous residence requirement under section 316(a) or 319(a) of the Act as much as three months before the date upon which the applicant would otherwise satisfy such continuous residence requirement in the State or Service district, as defined in 8 CFR 316.1, where residence is to be established for naturalization purposes. At the time of examination on the application, the applicant will be required to prove that he or she satisfies the residence requirements for the residence reflected in the application.

[56 FR 50480, Oct. 7, 1991, as amended at 76 FR 53797, Aug. 29, 2011]

⬆ Back to Top

### §310.3  Administration of the oath of allegiance.

(a) An applicant for naturalization may elect, at the time of filing of, or at the examination on, the application, to have the oath of allegiance and renunciation under section 337(a) of the Act administered in a public ceremony conducted by the Service or by any court described in section 310(b) of the Act, subject to section 310(b)(1)(B) of the Act.

(b) The jurisdiction of all such courts specified to administer the oath of allegiance shall extend only to those persons who are resident within the respective jurisdictional limits of such courts, except as otherwise provided in section 316(f)(2) of the Act. Persons who temporarily reside within the jurisdictional limits of a court in order to pursue an application properly filed pursuant to section 319(b), 328(a), or 329 of the Act or section 405 of the Immigration Act of 1990 are not subject to the exclusive jurisdiction provisions of section 310(b)(1)(B) of the Act.

(c)(1) A court that wishes to exercise exclusive jurisdiction to administer the oath of allegiance for the 45-day period specified in section 310 (b)(1)(B) of the Act shall notify, in writing, the district director of the Service office having jurisdiction over the place in which the court is located, of the court's intent to exercise such exclusive jurisdiction.

(2) At least 60 days prior to the holding of any oath administration ceremony referred to in §337.8 of this chapter, the clerk of court shall give written notice to the appropriate district director of the time, date, and place of such ceremony and of the number of persons who may be accommodated.

(d) A court that has notified the Service pursuant to paragraph (c)(1) of this section shall have exclusive authority to administer the oath of allegiance to persons residing within its jurisdiction for a period of 45 days beginning on the date that the Service notifies the clerk of court of the applicant's eligibility for naturalization. Such exclusive authority shall be effective only if on the date the Service notifies the clerk of court of the applicant's eligibility, the court has notified the Service of the day or days during such 45-day period on which the court has scheduled oath administration ceremonies available to the applicant. The Service must submit the notification of the applicant's eligibility to the clerk of court within 10 days of the approval of the application pursuant to §337.8 of this chapter.

(e) *Waiver of exclusive authority.* A court exercising exclusive authority to administer the oath of allegiance pursuant to paragraph (c) of this section may waive such exclusive authority when it is determined by the court that the Service failed to notify the court within a reasonable time prior to a scheduled oath ceremony of the applicant's eligibility such that it is impractical for the applicant to appear at that ceremony. The court

shall notify the district director in writing of the waiver of exclusive authority as it relates to a specific applicant, and the Service shall promptly notify the applicant. The Service shall then arrange for the administration of the oath of allegiance pursuant to §337.2 of this chapter.

[58 FR 49911, Sept. 24, 1993, as amended at 66 FR 32144, June 13, 2001]

⬆ Back to Top

§310.4   Judicial naturalization authority and withdrawal of petitions.

(a) *Jurisdiction.* No court shall have jurisdiction under section 310(a) of the Act, to naturalize a person unless a petition for naturalization with respect to that person was filed with the naturalization court before October 1, 1991.

(b) *Withdrawal of petitions.* (1) In the case of any petition for naturalization which was pending in any court as of November 29, 1990, the petitioner may elect to withdraw such petition, and have the application for naturalization considered under the administrative naturalization process. Such petition must be withdrawn after October 1, 1991, but not later than December 31, 1991.

(2) Except as provided in paragraph (b)(1) of this section, the petitioner shall not be permitted to withdraw his or her petition for naturalization, unless the Attorney General consents to the withdrawal.

(c) *Judicial proceedings.* (1) All pending petitions not withdrawn in the manner and terms described in paragraph (b) of this section, shall be decided, on the merits, by the naturalization court, in conformity with the applicable provisions of the judicial naturalization authority of the prior statute. The reviewing court shall enter a final order.

(2) In cases where the petitioner fails to prosecute his or her petition, the court shall decide the petition upon its merits unless the Attorney General moves that the petition be dismissed for lack of prosecution.

⬆ Back to Top

§310.5   Judicial review.

(a) *After 120 days following examination.* An applicant for naturalization may seek judicial review of a pending application for naturalization in those instances where the Service fails to make a determination under section 335 of the Act within 120 days after an examination is conducted under part 335 of this chapter. An applicant shall make a proper application for relief to the United States District Court having jurisdiction over the district in which the applicant resides. The court may either determine the issues brought before it on their merits, or remand the matter to the Service with appropriate instructions.

(b) *After denial of an application.* After an application for naturalization is denied following a hearing before a Service officer pursuant to section 336(a) of the Act, the applicant may seek judicial review of the decision pursuant to section 310 of the Act.

⬆ Back to Top

Need assistance?



**U.S. Department of Justice**
Executive Office for Immigration Review
Board of Immigration Appeals, Office of the Clerk
5107 Leesburg Pike, Suite 2000
Falls Church, Virginia 20530-0001

EOIR status toll free telephone line:   (800) 898-7180
Tel. (703) 605-1007
Board's *Practice Manual*:   www.usdoj.gov/eoir

Date:   6/9/15                    RE                      097-649-034

Appeal from a DHS District Director's Decision

> *Your submission is being returned for the reason(s) indicated.   No record has been made of this correspondence and should you write again concerning this same matter, please return this notice along with your correspondence.*

  **DO NOT** file your appeal (EOIR-29) directly with the Board of Immigration Appeals. An appeal from a decision of a DHS/USCIS District Director must be filed with the District Director/Service Center where the petition was denied. Use a Form EOIR-29 (Notice of Appeal to the Board of Immigration Appeals from a Decision of a DHS Officer) and include a filing fee of $110. Attach a copy of the District Director's decision that is being appealed.   You may include a brief and supporting documents with your appeal. When the Board receives the record, a receipt will be sent to the parties to indicate that the file is at the Board and that a decision will be forthcoming.   <u>Until the DHS/USCIS forwards the record of proceedings to the Board</u>, all status inquiries and submissions must be directed to the DHS/USCIS office where the appeal was filed. Once the EOIR-29 (appeal) is received and processed, the DHS/USCIS will forward the complete record of proceedings to the Board when the record is ready.

☐   The Board of Immigration Appeals shows no record that this case is pending before it. To determine the whereabouts of the record file and the status of this case, please contact the DHS/USCIS office where the appeal was filed.

*Rebecca Noguera*
Rebecca Noguera Appeals Examiner

US DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE OF IMMIGRATION REVIEW
**BOARD OF IMMIGRATION APPEALS**
5107 Leesburg Pike, Suite 2000
Falls Church, VA 20530

Registration No. A-097649034

# SUBMISSION-APPEAL OF MARIANNE LISENKO

Marianne Lisenko
1221 M Street NW, apt.834
Washington, DC 20005
202-210-2214,  listen2mary@hotmail.com

Copies to:

US Solicitor General DONALD B. VERRILLI
950 Pennsylvania Ave., NW
Washington,  DC  20530-0001

DHS General Counsel STEVAN  E. BUNNELL
245 Murray Lane, Mail Stop 3680
Washington, DC 20528

USCIS  Chief Counsel  UR MENDOZA JADDOU
20 Massachussettts Ave. NW,  Rm 5110
Washington, DC 20529



May, 2015

US DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE OF IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
5107 Leesburg Pike, Suite 2000
Falls Church, VA  20530

In the Matter of
**MARIANNE LISENKO**,   **Petitioner**-appellant,  A-097 649 034
1221 M Street NW, #834,
Washington, DC,  20005
and
**LORETTA LYNCH**, US Attorney General
**JEH JOHNSON**, Secretary of US  Dept.of  Homeland Security  and
**LEON RODRIGUEZ**, Director of US Citizenship & Immigration  Services
**Respondents**

### 1.  NOTICE OF APPEAL
OF AN USCIS OFFICER'S DECISION (with fee waiver request)

### 2. MOTION TO REOPEN, TO WAIVE TIME  LIMITATIONS, TO ACCEPT  NEW EVIDENCE AND OMITTED EVIDENCE WITH  AFFIDAVIT-STATEMENT OF FACTS+LAW

### 3.  REQUEST FOR CONCURRENT CONSIDERATION OF APPEALS OF  I-360, I-485  APPLICATIONS ON CUMULATIVE GROUNDS(I-589)

### 4.   SELECTED SUPPORTING DOCUMENTS

**Copies:**
US Solicitor General  Donald B. Verrilli
950 Pennsylvania Ave. NW
Washington, DC  20530-0001

DHS General Counsel  STEVAN E. BUNNELL
245 Murray Lane, Mail Stop 3680
Washington, DC 20528

USCIS  Chief Counsel  UR MENDOZA
20 Massachussetts Ave. Rm.  5110
Washington, DC  20529

# CONTENTS

**Section 1**

Notice of Appeal.................................................................p. 4

USCIS decision appealed of April 25, 2015....................p. 5

Fee Waiver Request...........................................................p. 7


**Section 2**

Motion to reopen, to waive time limitations and to accept new
evidence and omitted evidence........................................p. 9

Affidavit-Statement of Facts and Law............................p. 12


**Section 3**

Request for concurrent consideration of applications......p. 21


**Section 4**

List of Exhibits -selected supporting documents
and questioned authorities ..............................................p. 23

Exhibits 1 to 17  .............................................................p. 23-68

## SECTION 1

Notice of Appeal

USCIS decision appealed of April 25, 2015

Fee Waiver Request

U.S. Department of Justice
Executive Office for Immigration Review
*Board of Immigration Appeals*

OMB No. 1125-0010

**Notice of Appeal to the Board of Immigration
Appeals from a Decision of a DHS Officer**

---

| WHERE TO FILE THIS APPEAL: |
| --- |
| **Do not file this directly with the Board of Immigration Appeals.** |
| This Notice of Appeal must be filed with the Department of Homeland Security (DHS) within 30 calendar days after service of the decision of the DHS Officer. Please read the complete instructions on the back of this form. |

1. Choose <u>one</u> of the boxes:

   ☑ I am filing an appeal from a decision of a USCIS
   Officer: Laura B. Zuchowsky

   Name of Beneficiary:

   A-Number, if any, of Beneficiary: 097 649 034

   Petition Form Number: I-360 / I-290B

   | Fee Stamp (Official Use Only) |
   | --- |
   |  |

   ☐ I am filing a different type of appeal from a decision of a DHS Officer (e.g., carrier and fine decision, INA 212(d)(3)(A) waiver decision, permissible DHS bond decision)

   Name:

   A-Number, if any:

   Carrier and fine number:

   Any other relevant information:

2. I hereby appeal to the Board of Immigration Appeals from the decision of the

   <u>Center Director</u>  issued by <u>Vermont USCIS</u>
   *(Title of DHS Officer)*                *(Office Where DHS Decision was Issued)*

   dated <u>Apr. 25, 2015</u>  in the above entitled case.
   *(Date of DHS Decision)*

3. Specify reasons for this appeal and continue on separate sheets if necessary. Please refer to Instruction #2 for further guidance. *Warning: If the factual or legal basis for the appeal is not sufficiently described, the appeal may be summarily dismissed.*

   Abuse of procedures, abuse of discretion.

4. Do you desire oral argument before the Board of Immigration Appeals? ☑Yes ☐No

5. Do you intend to file a separate written brief or statement after filing this Notice of Appeal?
   *Warning: If you indicate "yes" you will be expected to file a written brief or statement. Please refer to the Instructions for further information.* ☑Yes ☐No Included within this submission

   <u>May 19, 2015</u>          <u>[signature]</u>
   Date                   Signature of Appellant *(or Attorney or Representative)*

   <u>Marianne Lisenko</u>
   *(Print or Type Name)*

   <u>1221 M Street NW, apt. 834, Washington, DC 20005</u>
   *Address (Number, Street, City, State, Zip Code)*

   Form EOIR-29
   Revised Jan. 2015

4



U.S. Department of Homeland Security
U.S. Citizenship and Immigration Services
Vermont Service Center
75 Lower Welden Street
St. Albans, VT 05479

**U.S. Citizenship and Immigration Services**

April 25, 2015

A Number: A097649034
File Receipt Number: EAC0401352765
Motion Number:  EAC1503550600

MARIANNE LISENKO
1221 M STREET NW APT 834
WASHINGTON DC  20005

Applicant/Petitioner Name: MARIANNE LISENKO
Beneficiary:

Dear Sir/Madam:

On November 18, 2014 you filed a motion to reopen and reconsider the denial of your Petition for Amerasian, Widow (er) or Special Immigrant (Form I-360).  Your Form I-360 was filed on October 9, 2003 and denied on April 18, 2005.

Title 8 Code of Federal Regulations (8 CFR), section 103.5(a)(1)(i) states in part:

> Any motion to reconsider an action by the Service filed by an applicant or petitioner must be filed within 30 days of the decision that the motion seeks to reconsider.  Any motion to reopen a proceeding before the Service filed by an applicant or petitioner, must be filed within 30 days of the decision that the motion seeks to reopen, except that failure to file before this period expires, may be excused in the discretion of the Service where it is demonstrated that the delay was reasonable and was beyond the control of the applicant or petitioner.

Title 8 Code of Federal Regulations, section 103.8(b) provides in pertinent part:

> (b) <u>Effect of service by mail</u>.  Whenever a person has the right or is required to do some act within a prescribed period after the service of a notice upon him and the notice is served by mail, 3 days shall be added to the prescribed period.  Service by mail is complete upon mailing.

Title 8 Code of Federal Regulations, section 103.5(a)(4) provides in pertinent part:

> A motion that does not meet applicable requirements shall be dismissed.

FOR OFFICE USE ONLY

**S**

EAC
A097649034
Page 2

Your motion to reopen or reconsider was not submitted within the required 33 days.  The delay in filing was not found to be reasonable and beyond your control.  Your motion is dismissed per 8 CFR 103.5(a)(4).

Sincerely,

*Laura Zuchowski*

Laura B. Zuchowski
Center Director

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

Case 1:15-cv-01048-RBW   Document 1   Filed 07/02/15   Page 20 of 81

OMB# 1125-0003

Fee Waiver Request

Name: _Marianne Lisenko_

Alien Number ("A" Number): _A-097649034_

> *If more than one alien is included in your appeal or motion, only the lead alien need file this form. This form is to be signed by the alien, not the alien's attorney or representative of record.*

I, _Marianne Lisenko_ , declare under penalty of perjury, pursuant to 28 U.S.C. section 1746, that I am the person above and that I am unable to pay the fee. I believe that my appeal/motion is valid, and I declare that the following information is true and correct to the best of my knowledge:

**Assets**

Wages, Salary — $ 0 /month

Other Income (pension) ~ $ 200 /month
(business, professional services, self-employed/independent contracting, rental payments, etc.)

Cash — $ 0

Checking and/or Savings ~ $ 300

Property ~ $ 2000
(real estate, automobile(s), (stocks) bonds, etc.)

Other Financial Support ~ $ 50 /month
(public assistance, alimony, child support, gift, parent, spouse, other family members, etc.)

**Expenses** (including dependents)

Housing — $ 55 /month
(rent, mortgage, etc.)

Food — $ 100 /month

Medical/Health — $ 0 /month

Utilities wifi — $ 15 /month
(phone, electric, gas, water, etc.)

Transportation ~ $ 10-30 /month

Debts, Liabilities — $ 0 /month

Other postal, copies, misc. ~ $ 10-50 /month
(specify)

Signature of Alien _[signature]_       Date _May 19, 2015_

Under the Paperwork Reduction Act, a person is not required to respond to a collection of information unless it displays a valid OMB control number. We try to create forms and instructions that are accurate, can be easily understood, and which impose the least possible burden on you to provide us with information. The estimated average time to complete this form is one (1) hour. If you have comments regarding the accuracy of this estimate, or suggestions for making this form simpler, you can write to the Executive Office for Immigration Review, Office of the General Counsel, 5107 Leesburg Pike, Suite 2600, Falls Church, Virginia 20530.

**Privacy Act Notice**
The information on this form is requested to determine if you have established eligibility for the fee waiver you are seeking. The legal right to ask for this information is located at 8 C.F.R. § 1003.8(a)(3). EOIR may provide this information to other Government agencies. Failure to provide this information may result in denial of your request.

Attorney or Representative (if any):

I hereby attest that I have reviewed the details provided herein and I am satisfied that this fee waiver request is made in good faith.

_____   _____
Signature of Attorney or Representative        Date

_____
Print Name

Form EOIR-26A
Rev. January 2015

7

## SECTION 2

Motion to Reopen, to waive time limitations, to accept recently acquired and omitted evidence.

AFFIDAVIT – STATEMENT OF FACTS AND LAW

## US BOARD of IMMIGRATION APPEALS

In the Matter of
MARIANNE LISENKO,  Petitioner   A-097649034
and
LORETTA LYNCH
JEH JOHNSON, Secretary of US Department of Homeland Security  and
LEON RODRIGUEZ,  Director of US Citizenship and Immigration Services

## <u>MOTION TO REOPEN, TO WAIVE TIME LIMITATIONS AND TO ACCEPT NEW EVIDENCE AND OMITTED EVIDENCE</u>

**1.**

This Motion of a compound nature  (in this Appeal of a decision by an immigration officer)  is first and foremost justified  on the basis of the need to settle inconsistencies, contradictions, omissions and absurdities in immigration forms, instructions and rules.   It is necessary to "establish a precedent construing the meaning  and validity of  immigration laws, regulations and procedures"  and to "resolve a controversy of national import" .

**2.**

This Motion to Reopen the questionable APPROVAL-DENIAL  of my I-360 appeal (Form I-290B filed in 2005)  is justified on the basis of  new circumstances and evidence that were not  present at the time of filing  my I-360, I-485 ( I-589), or were omitted as a result of the overwhelming stress and emotional pain that I was under after fleeing my  home in Quebec (details in attached Affidavit and Exhibits in Section 4 of this submission).

**3.**

The  I-290B that was filed in 2005 was  APPROVED on Sept. 19,2005 (blocked copy, Exhibit 1 in  Section 4), then on Sept.20, 2005, possibly because of political pressure from Quebec, it was  rejected, though the  validity of  that rejection as well as the  rejection of the concurrent  I-485 has not been shown  and there is NO Order of Administrative Closure of  my case  signed by the Attorney General,  or the Secretary of DHS, or the Director of USCIS HQ   or by the Vermont USCIS District or Regional Director.

9

**4.**

In 2006, despite the Sept.20, 2005, letter signed by USCIS Center Director Paul Novak,  Judge Sessions of Vermont District Court stated in his order that there was NO FINAL decision regarding the I-360 application or the I-485 (Exhibit· 5 ) USCIS  website reports up to May, 2014, kept repeating that there was an Approval of the  I-360 (Exhibit 11b). The November 1, 2005, letter-rejection signed by Acting Director Sandra Bushey, therefore, cannot be valid.

**5.**

In 2007 one  member of the Board of Immigration Appeals  signed a PER CURIAM  rejection of my  prima facie credible and  deserving  refugee-asylum application  I-589 (Exhibit 6)  if not under the principles of the Convention against Torture, which is not US statutory law, then certainly under the 1980 Refugee Act, 94 STAT 102.  It is an established generally known fact that there is a supremacist French Charter, that it has been driving people out of Quebec  and causing them hidden from any wide  publicity pain, humiliation and financial losses.   The appeal  was rejected despite  errors of  fact and  egregious abuse of procedure – **there was no asylum hearing and a false fabricated transcript was prepared**. The Board did not advise me of my right to seek a  review by  a 3-member panel, nor is it clear whether the  "per curiam"  decision was a perfunctory, politically motivated rejection by the person who signed it.   Abuse of due process standards and of reasonable discretion have plagued all  my good faith efforts to become a US citizen for over 12 years now.

**6.**

I  truly believe there  are cowardly people who  have been and are  attempting to end my life rather than see me - a former  5th, 6$^{th}$$^{,etc.}$  class Canadian, become the citizen of  a country  where  the theory of  EQUITABLE  JUSTICE FOR  ALL can and  will become a reality in practice for every individual on its territory, where all people in positions of  authority are truly accountable and are of high MERIT and INTEGRITY.  This, in turn, will become the highest  and most convincing  example of  the exceptional, peaceful, prosperous and diverse models that  the United States of America  were  MEANT TO BE -  for every individual and every state on the planet.

7.

Time limitations cannot be used to prevent justice from taking its course.  Through no fault of mine, I have been prevented from obtaining the financial security I earned and to date I have been denied even the minimum retirement benefits I am entitled to, either from Quebec, Canada or the US.  I have been prevented from receiving any kind of support from my deceptive husband.  I am a de facto stateless indigent person with no freedom and no financial ability or documentation to travel with, yet all my life I have sincerely tried to do what is right.

For all the above reasons, I pray this motion be granted.

SIGNED in Washington, DC, on May 19, 2015

MARIANNE LISENKO
1221 M Street NW, #834
Washington, DC 20005

Affidavit attached

Copies to Respondents as per cover

<u>**US  BOARD OF IMMIGRATION APPEALS**</u>

A-097649034

**AFFIDAVIT  - STATEMENT OF FACTS AND LAW**

I, **MARIANNE LISENKO**, aka MARY LISTEN,  born stateless in Charleroi,
Belgium, to my parents - displaced refugees, victims of Nazi persecution and
World War 2.  I  am the Petitioner-Applicant in this and in several other related
proceedings in which I have been seeking US status and citizenship over the **last
11 years**.

**1.**
I fled from my abusive husband and my home in Quebec on or around March 20,
2003.  I lived, worked and volunteered in Burlington, Vermont, for six years after I
received my  first USCIS Employment Authorization card. I came to the  District
of Columbia  in order to pursue  my case with  federal officials and  leaders in
Congress.  I have volunteered at N Street Women's Center, as an independent
observer in Congress and in the courts, as an advocate for fair housing and
as an interviewer with DC Community Tax Aid.

**2.**
I had also fled  from what I believe  was and still is  intimidating and dangerous to
my life and my family's well-being  persecution  by  unknown people  because of
my legal challenges to the Quebec Charter of the French Language and  because
of  my promotion of the English language with a prayer and an essay that I had
written.  Both my children have now left Quebec and my husband too, I have
learned, has sold his lucrative business and is now seeking to deny me  any kind of
property and spousal  rights (see Request to Quebec Superior Court for English
language proceedings  Exhibit 7  in Section 4).  My online posts get hacked, my
website with my prayers was removed.  I cannot access my blog and  the
worldprayers.org  website would not post my very positive  interfaith Universal
Prayer which promotes justice, peace and  harmony.

**3.**
In addition to facts already described in the several affidavits that I filed with
USCIS and other agencies,  I must add the incident whereby a Caisse Populaire de

1 of 8

St.Pie, Quebec, envelope which contained a white powder was sent to our home as an intimidating gesture. This happened after 9/11 and after the news that envelopes with anthrax were mailed to US senators was made public. I did not report that incident because I had already been ignored about other incidents of damage being done to my vehicle, about my husband's behaviors, about the unjustified refusals to admit our children to the private schools we applied to, about taser and other invisible methods of assault and harassment of me and other members of my family.

**4.**

I now believe that the Ford Explorer I was driving had driverless remote technology and that it was so equipped in order to intimidate us, and possibly to cause an accident. On one occasion my daughter and I witnessed how the vehicle suddenly started moving after I parked and turned the ignition off. I was able to quickly jump back in and brake before the vehicle hit another car. My report to the police was ignored, similarly to another incident when the locked and safely parked vehicle was remotely driven away and re-parked. I DID SEE IT moving without a driver, though at the time I couldn't believe my own eyes!

**5.**

In 2003, shortly after arriving in Burlington, Vermont, I discovered a large dagger knife in my car; knives kept disappearing from my apartment in Burlington and one has also been taken from my DC apartment. I have been denied access to my building's security camera footage in order to verify if anybody has been entering and placing bugs and mice in my studio in order to scare me. I had filled every nook, crevice, crack, every opening around plumbing with a toxic sealant so there is no way anything crawled into the apartment from another area of the building. (The other probable cause of the intrusions is that maybe the souls of very guilty people come back as animals or insects and they want me to warn the living about the possible effects of reincarnation and trans**migration.**)

**6.**

In 2012 an anonymous intimidating letter was sent to me (Exhibit 9).

**7.**

My suspicion that a tracking device or some other experimental object was placed in a tooth by dentist S. Pirok in 2004 was confirmed when the tooth was extracted this past February, 2015.

2 of 8

**8.**

I carefully carried that tooth in a small purse strapped across my chest and I hoped to get it examined by an independent party. As I feared, my purse with the tooth and other important to me items got stolen by Uri Geller type trickery or by some other skilled practice. Most amazing is the fact that the theft ocurred at a Senate hearing that I was attending. I believe the theft was carefully orchestrated. I did get a police report (Exhibit 10) about this last incident and I do hope that surveillance cameras in Dirksen hearing room 101 and an investigation WILL establish who is behind all the seemingly minor harassment and intimidation that has been instigated against me.

**9.**

It is difficult not to conclude that there must be people who are being paid to track everything I do and everywhere I go -- all with the purpose of intimidating and punishing me for seeking help in the USA and for exposing the mistreatment English-speaking minorities in Quebec have suffered and are still suffering. As well, my case demonstrates the mistreatment of women by authorities when they seek help, especially bold minority women.

**10.**

My I-485 Application to Adjust to Permanent status was filed concurrently with my I-360 Application as a self-petitioning victim of domestic abuse under the GENERAL principles of crime prevention and assistance for women-victims of domestic violence, as an exception to the "US citizen-spouse" rule and as an exception to the **authorized immigrant visa entry** requirement. But the **non-quota visa rule** and the **no-visa for visitors** entry rules for most native Canadians, Central and South Americans actually invites "illegal" migrants. Adjustment to Status applications are the proof and if reports from congressional hearings are true, those adjustment applications are routinely approved. One does need to pay the non-refundable exorbitant fees a few times, pay the lawyers and maybe bribe a few people. Anything is possible when an agency operates in secrecy (fortunately, changes are being made). The book **Corruption in America** by Professor Zephyr Teachout confirms the probability that money laundering and bribes were and, perhaps, still are part of the immigration culture.

**11.**

The 1994 Violent Crime Control and Law Enforcement Act (which included Division B titled Violence Against Women Act) 108 STAT 1953, does not include a "US-citizen-spouse" rule. Given that for the majority of refugees around the World, and for other people seeking a better life, Canadian citizenship is equivalent to American citizenship, given that both governments aspire to be models of fairness and they do work for the improvement of the status of women, it is **important to acknowledge that not all is well in the lands of milk and honey.**

**12.**

The last Violence Against Women Reauthorization Act of 2013, also allows a broad basis for recognition of eligibility for I-360 self-petitioners despite the narrow regulatory and statutory restrictions of eligibility to spouses and children of US citizens or permanent residents. In all cases, because of the highly arbitrary-discretionary nature of immigration proceedings, because of the numerous texts and amendments to the Statutes and the ever-expanding Title 8 of the US Code (Aliens and Nationality) - waivers and exceptions are standard practice. The absurdly lengthy obfuscating numbering-lettering of the different sections and subsections of Title 8 of US Code appear to be a direct insult to the intelligence of anyone who tries to decipher the repetitive and endless automatic legal writing and "codifying". The Immigration and Naturalization Act is constantly mentioned in forms and publications, etc., but never, or very rarely, is the year of passage of the Act given. Is it the 1940 text, the 1952, the 1965, 1986 or the 1990, the 1996 text that is the most 'authoritative imprimatur' (Exhibit 15-Immigration Acts Chronology)? Shouldn't there be a clearly written comprehensive immigration law that takes the best practices from the whole statutory record, that is re-written **in full** and that repeals all previous texts and amendments?

**13.**

Does Title 8 of the US Code reflect the true, fair and authoritative body of all the Immigration and Naturalization Acts, "as amended", and can anyone really verify if all the concordances match (Exhibit 17)? Are the Code of Federal Regulations and the Federal Rules simply a constant tweeking of redundant legalese which is meant to confuse and procrastinate procedures rather than expedite them, as all

4 of 8

15

legal theory proclaims the need to do? ... I must conclude that all those confusing never-ending sets of volumes are written by highly skilled publishing professionals in order to justify their own salaries and the exorbitant fees immigration lawyers charge for behind the scenes SIMPLIFIED DISCRETIONARY DEAL-MAKING based not on laws of common sense, but on how much who will pay.

**14.**

I believe Paul Novak of the Vermont USCIS Service Center abused his discretion when he rejected my I-360 application, my very unique life story and the circumstances of **extreme financial poverty** that I have been forced into.

**15.**

I was eligible for a work permit as an asylum seeker which would have alleviated my poverty, then as the sister of a US citizen, yet in both cases the Vermont Center refused to issue a permit and they did not refund the fees though they did when Paul Novak wrote me the Sept.20, 2005 letter of rejection. I am a registered alien, I have a US social security number and I receive a very small retirement benefit. According to the 1986 Immigration Reform and Control Act , 100 STAT 3359/3387, I am in "satisfactory immigration status" and it means that I am eligible for financial assistance. (Exhibit 16).

**16.**

I would certainly prefer to be working and earning income. I am healthy, able and willing – it defies all common sense and logic to deny me the temporary, one year only work permit. I have always been able to find a job, no matter how low paid, and, as a senior I am entitled to a minimum social security payment under the US-Canada Agreement which to date has been denied to me by officials in Quebec. I assume they hope the stress of my poverty and the ambiguity of my US status might end my life because I am too humiliated to ask for help from any family members (who might even resent associating with me and who fear retaliation), though I am grateful for the birthday and Xmas gifts I have received.

**17.**

I strongly object to the "extreme cruelty" rule that immigration officers are instructed to apply for approval of a battered wife I-360 application. Under the Convention Against Torture, which is usually applied in regard to the treatment of

16

prisoners and dissidents, mostly men, the "severe cruelty" standard is used.   The different standards are unconscionable, unacceptable and can only be seen as a subliminal promotion of extreme cruelty towards women or even self-mutilation by desperate women trying to obtain status. Plus, nobody can survive extreme cruelty.  It can only be miraculously escaped.  Extreme cruelty is a beheading, burning a person alive at the stake, boiling or beating someone  to death (as was Natasha McKenna by police

**18.**

In 2005 I filed an I-290B appeal of Paul Novak's April 18, 2005,  letter-decision with the Administrative Appeals Office  in Washington, DC, and  with the Vermont Service Center.  The validity of  those proceedings, given the absence of AAO statutory authority is  now questioned, as is  my October 31, 2014,  I-290B motion to re-open and reconsider.   To highlight the absurdity of those efforts, the Vermont Service Center  sent me  fee waivers for  the  I-290B appeal of 2014 and for my application for employment authorization (Exhibits 3, 3a). Then, unnamed officials in Vermont forwarded the submission to a lockbox facility in Phoenix, Arizona.  Officials in Arizona  ignored the fee waiver request and the approval by Vermont and sent a rejection notice. (Exhibit 4).  The Washington  AAO  did not acknowledge receipt of my 2005 submission or  the 2014 one, though I cannot prove that either mailing by certified mail  or  by courier  were ever delivered . The last mailing receipt was in the purse that got stolen.  The I-290B form instructions do not mention anything about a lockbox  facility and they are misleading about where to file.  Nothing is mentioned about filing proof of  service  to  the DHS or the DOJ and, of course, the 2002 Act establishing the Department of Homeland Security does not say anything about a USCIS Adminstrative Appeals Office.

**19.**

Up to May 2014, USCIS  website status reports kept saying that my  2005 appeal was APPROVED on Sept.19, 2005 (Exhibit 11b ). A copy of what appears to be an official  APPROVAL NOTICE **on distinctive safety paper** is  blocked from  the record I  received  from the National Records Center (Exhibit 1 ).

Judge Sessions mentions the issue of validity in his order and it must be recognized that by all legal standards, the same person who makes one decision cannot be the one who is reviewing it  and  maintaining his rejection, as did Paul Novak on September 20, 2005. That is apart from the general aspect of  AAO's  procedural

validity, of the want of best practices and propriety that are evident in my case, the want of a truly independent and objective review.

**20.**

On April 25, 2015, Vermont Center Director Laura Zuchowsky sent a letter stating that my I-290B appeal , the one that was rejected by Phoenix because the proper filing fee was not paid, but which Vermont waived, was now "out of time"(letter in Section 1 with Notice of Appeal). I could not confirm that Laura Zuchowsky is the Vermont Center's Director even after calling the DHS Office of the Inspector General and after emailing the DHS Secretary and USCIS HQ Director Rodriguez.

**21.**

I must underline and stress the unique nature of my appeals for help as a victim of domestic abuse. Emotional financial abuse is more pervasive, more difficult to escape, more damaging in the long term. After 12 years my emotional pain and sadness persists, no matter how I am able and MUST laugh about it and keep busy in order not to succumb to acute, debilitating depression. My adult children will carry the trauma of a broken family, however deeply hidden, all their lives.

**22.**

The suspicion, or known to them fact, that their father married me in bad faith and believed he could drive me insane or end my life in some invisible psychic, ritualistic voodoo way because he has the ability and/or negative blood to do it – will taint every relationship they have, as it keeps me from even wanting to have new friendships. Three men my husband had dealings with are now deceased… A coincidence? Can anything be proven?… Will anybody confess? I have reported to the police the death of my neighbor around the time I was feeling strange pressure and slight difficulty breathing. On another occasion a distinct sharp shock-like pain was inflicted on me, I believe, by a man who sat next to me at a library computer. The shock went up my elbow and I sometimes still feel a mild pain in my shoulder joint from it. A woman by the name of Rodica Simionas who came to DC from California appears to have tried to affect my health too, as did another woman who sat next to me at a Library of Congress computer. On that occasion a strange paralyzing pain took over my foot and I was barely able to walk, but the effect lasted only about two or three hours.

All the above stated facts, the highly probable and the proven ones, the 12 years of unjustified refusals to allow me to earn a regular income demonstrates PROCEDURAL and DISCRETIONARY ABUSE OF A SYSTEMIC NATURE by US Citizenship and Immigration Services. It must be remedied.
I believe I have been specifically targeted for the mistreatment because of my age and my extreme financial poverty, poverty which has been forced on me by Quebec officials, believers in French supremacy - "distinctness" and by those who they have influenced in the US.

I declare under Oath and penalties of perjury that all the facts and arguments in this Affidavit are true and that they are made in good faith to the best of my knowledge and beliefs.

Signed in Washington, DC, on May 1?, 2015

MARIANNE LISENKO  _____

8 of 8

19

## SECTION 3

Request for concurrent consideration of
Applications I-360, I-485

# US BOARD OF IMMIGRATION APPEALS

Marianne Lisenko, A-097649034

## REQUEST FOR CONCURRENT CONSIDERATION OF APPEALS OF I-360, I-485  ON CUMULATIVE GROUNDS (I-589)

On the basis of all the facts and  numerous immigration procedures that I have filed, on the basis of the multitude of  changing and discordant  laws,  regulations, rules, forms and instructions herein  referred to ,  I PRAY that  members of this Board will  recognize  that  grievances of a systemic  nature  in  US immigration practice  need to be remedied and that, therefore,  they will grant  me the benefit that I have earned and deserve.


Signed in Washington , DC  on   May 19 , 2015

MARIANNE LISNEKO   _____

1221 m Street NW, #834

Washington, DC 20005

1 of 1

21

# SECTION 4

List of Exhibits

Exhibits 1 to 17

22

## List of Exhibits and questioned authorities:

1. Blocked copy from National Records Center of I-290B appeal approval of 2005 p.24

2. Copy of I-290B Motion to Reopen, Reconsider of 2014

3. Fee Waiver approval for I-290B Motion to Reopen of 2014

3a. Fee Waiver approval for Application for Empl.Author. Card of 2014

4. Phoenix lockbox Fee Waiver Rejection for I-290B of 2014

5. Opinion-Order by Judge Sessions III of Vermont District Court, 2006   p.38

6. BIA Per Curiam decision of 2007

7. Request to Quebec Superior Court for English language proceedings of 2015 p.49
   in husband's suit to deny petitioner all property rights.

8. Letter to Quebec Notary Eric Lecours re Quebec property registrations of May, 2007 p.51

9. Anonymous intimidating letter of 2012   p.53

10. Police Report re. orchestrated theft at Dirksen Senate Bldg of 2015

11. USCIS website immigration status reports;

    a) for I-290B approval report of 2006

    b) for I-290B approval report of 2014

    c) for I-485 pending of 2006

12. Copy of I-360 Receipt of 2003   p.58

13. Copy of I-485 Receipt of 2003   p.59

14. Un-answered letter to District Director of Sept, 2006,
    re. temporary documents

15. Immigration Acts selected Chronology

16. Immigration Reform and Control Act,1986, 100 STAT 3359/3387, excerpt

17. Pages out of US Code, Title 8, concordances

2B



Perry Rhew, Division Chief
Administrative Appeals Office
20 Massachussetts Ave., NW
Washington, DC 20529

Jean Tharpe and Edward A. Newman, Directors
USCIS Vermont Service Center
75 Lower Welden Street
St.Albans , VT 05479-0001

<u>**RE: Form I-290B and Statement in Support of Motion to Reopen and Reconsider Questionable Decisions**</u> (of April 18, September 20, October 4 + November 1, 2005).
Marianne Lisenko, USCIS Case A-097649034

Preliminaries:
**1.** REQUEST TO ACCEPT FILING FEE OF IMPROPERLY REFUNDED FEE OF $110, AS PER enclosed Exhibit 2 – Request for Refund signed on October 4, 2005, by then Acting Director Sandra Bushey.

**2.** REQUEST FOR REFUND OF FILING FEES FOR UNJUSTLY DENIED APPLICATIONS TOTAL= **$525** (Exhibits 8,9,10 )

**3.** Should requests 1 and 2 be denied, please inform me, the Petitioner-Applicant, and I will forward the balance of the present highly objectionable fee of $635-110= **$525**

**4. Request for fee waiver (Form I-912 enclosed).**

I received a CD from the National Records Center with over 1200 pages of my USCIS file (viewable, blocked and empty pages). Director Jill Eggleston wrote incorrect lengthy letters in regard to my three requests for a copy of the I-290 approval. In her last letter- on CD- which had my "complete" file, she stated that another 25 pages were withheld; most importantly my full I-290B submission of 2005. I also believe the cover letters and the CD files from the NRC have been changed in order to confuse, discourage or intimidate me. 'Someone' (?) continues to enter my apartment and mixes my paper files, or removes certain ones (some are replaced), minor items get stolen or damaged. I continue to make reports to the police.

The substantive facts of my case **justified** the APPROVAL of my 2005 appeal but I do not know if the blocked document (Exhibit 1 ) that was sent to me on the CD is real or some kind of procedural tactic initiated by hostile officials with the hope that I will either give up or die. I did not receive that APPROVAL document, and I do not understand why it was sent blocked, when that is the main document I asked for. **Website case status reports as late as May, 2014, REPEATED THE MESSAGE THAT AN APPROVAL NOTICE WAS SENT TO ME ON SEPTEMBER 20, 2005** (Exhibit 22c).

1 of 9

In this written submission I have included the most relevant copies from the CD and new court documents, letters, and petitions.  I pray you will recognize my sincerity, my statelessness and my deserving of US citizenship efforts.

Enclosed:  Money order  for $110 (in submission to Vermont Service Center)

Pages  1+2  of    are an integral part of  this submission,  as is 2-page  Form I-290B  and Exhibits 1-33 in Annex

Signed in Washington, DC on October 31, 2014


MARIANNE  LISENKO _____
1221 M Street NW, #834,
Washington, DC 20005, cell:202-210-2214                     true copy

2 of 9

USCIS ADMINISTRATIVE APPEALS OFFICE
20 MASSACHUSSETTS Ave., NW
Washington, DC 20529

VERMONT SERVICE CENTER
64 Gricebrook Road
St.Albans, VT  05478

## <u>STATEMENT IN SUPPORT OF MOTION TO REOPEN AND TO RECONSIDER QUESTIONABLE DECISIONS</u>

RE: Marianne Lisenko, Applicant-Petitioner,1221 M Street NW, #834, Washington, DC, 20005
A-097 649 034
Receipt Nos. **I-360**/EAC0401352765;  **I-485**/ EAC0401352532,  I-765/EAC0401352546
Receipt  EAC0517250099 **( Form I-290B Appeal)** of June 1, 2005

**Summary:**
The below-stated facts, new ones which  corroborate  the  previously submitted or omitted ones,
the attached  new court filings and previously filed  affidavits (Exhibits  12-18) and other
evidence  establish, and **had established  my eligibility**  for  permanent US status **in 2005**, as
per an APPROVED  appeal, which  was withheld  from me.   This submission also demonstrates
abuse of procedure by Paul Novak,  former Director of the Vermont USCIS, and by Acting
Director Sandra Bushey.   Confusion in the procedures, contradictions and/or absurdities in the
forms, **the unconscionable absence of judicial review**,  my own procedural  errors, the
unjustified denial of  temporary work permits and a travel document,  and  I believe,  political
interference  with  my immigration case,  – all the above has  caused  me extreme financial
hardship,  humiliation, degradation and shame,  in addition to  the irreparable  emotional trauma
of  being forced to leave my family, my friends and  my home  in Quebec, of not being able to
visit or to freely communicate with anyone for over 10 years.
1.

My original applications  as a VAWA self-petitioner  (Form I-360) under Title 8 USC
1182(a)(4)(E)(i) *Special Rule for alien victim,*  To Adjust to Permanent Resident Status (Form I-
485) and  for Employment Authorization (Form  I-765) were received by the Vermont Service
Center on  Oct.9, 2003 (Exhibits 3,4,5).   In my cover letter of  October 7, 2003,  and in all
subsequent futile **court  procedures**  based on my **unusual circumstances of a cumulative
nature**, I had presented **unique and novel  facts and arguments** in regard  to the mistreatment
I suffered as an immigrant wife and a former  Canadian citizen.   I continue to suffer.   Despite

10 years of petitioning, I remain a degraded, humiliated woman who has been deprived of the comfortable lifestyle that I earned and deserved prior to being forced by my husband and unknown others, and in fear for my life, to leave the Quebec-located family residence that I completed paying the mortgage on in full. My husband now occupies that residence and refuses to compensate me for my labors as a homemaker, a mother, as our children's tutor and driver, as an administrative assistant, a cook, a house-yard-pool maintenance person, as a petitioner for Ukrainian immigrants who worked for my husband and for English speakers' rights in Quebec.

**2.**

All my attempts for a US court order to compel payment by my husband have been dismissed on "personal" jurisdictional grounds, despite laws to the contrary and despite a judges's discretion to over-rule a potentially subversive principle, especially given my husband's deception . To date I have not found legal assistance in the US or in Canada. I will continue to seek the spousal support that I believe I am entitled to and I do expect to become financially secure and not in need of assistance from public wealth sources, save what I have earned or deserve as an equitable distribution (see Exhibits 23a-g, selection of filings in Vermont and DC courts; in particular the bad faith marriage agreement that my husband had written and arguments in my unjustly dismissed Motion for Default Judgment).

**3.**

On April 18, 2005, Vermont USCIS Director Paul Novak rejected my I-360 Petition for Amerasian, Widower, or Special Immigrant (Exhibit 19) and on May 27, 2005, my I-290 Appeal to the Adminstrative Appeals Office (AAO), which was sent to the Washington , DC, office and to the Vermont Service Center, was received, as per receipt number EAC-05-172-050099 ( Exhibit 7). It is not clear why the Notice of Action receipt is identified as a Notice of Appeal to the Commissioner and why the Washington office did not acknowledge reception of my appeal submission.

**4.**

I cited my eligibility under the principles of the Violence Against Women Act of 2000, the Special Rule section of Par. 1182 of the US Code and the 2003 9th Circuit case of *Hernandez v Ashcroft*. The 'discretionary-jurisdictional' arguments of the Hernandez case were found to be erroneous by the 10th Circuit in the *Perales-Cumpean v Gonzales* case because of the statutory denial of judicial review; the discussion regarding the definition of "extreme cruelty" is relevant, though highly questionable. It is almost impossible to survive "extreme cruelty", whereas torture victims only need to prove a standard of "severe cruelty".

**5.**

A September 19, 2005, Notice regarding my I-360 VAWA application states that it was reopened (Exhibit 8). In contradiction to that, a letter dated September 20, 2003(Exhibit 13), signed by Paul Novak states that my I-290 appeal was denied and that I can file another one, all of which appeared totally absurd. By that time I had submitted all my filings not only to the

Vermont Service Center and to the Adminstrative Appeals Office but also to the Vermont District Court and to the Boston Immigration Court . Copies of my tentative statement and submission to the AAO were stolen and I believed I had no recourse when Sandra Bushey wrote a letter dated Nov.1, 2005, in which she rejected my I-485 adjustment to status petition and stated that there was no appeal (Exhibit 21).

**6.**

More confusion and the appearance of anarchy in the process was caused by the fact **that my $110 appeal fee was returned,** despite the common USCIS practice of not returning fees for rejected applications. Acting Director Sandra Bushey authorized the refund as a strange Service Error (Exhibit 2).

**7.**

Non-refundable fees are especially unfair in regard to the simple one-page employment authorization which needs to be renewed every year by an eligible applicant. I lost potential earnings of at least $10000 per year over the 7 years that I survived with no income to speak of because, I believe, my last two applications for employment authorization were unjustly rejected. Today that one year card costs an exorbitant $350.

**8.**

The most inexplicable aspect of my **I-290 Appeal of 2005** is the fact that USCIS website status reports up to May, 2014, (Exhibit 22c ) kept stating that my **appeal was approved** and that a Notice with instructions was sent to me on September 20, 2005, the same day that Paul Novak wrote another questionable letter of rejection. I now believe that all the rejections I received, especially in regard to the TEMPORARY employment authorizations, were ILLEGAL and UNOFFICIAL actions by Paul Novak and Sandra Bushey, possibly at the instruction of Quebec and US officials **because they believed I would not survive the endless "procedures" and their abuses would never be discovered.** I also believe there were individuals in Vermont, just like in Quebec and in Ontario, and now in DC, who were and are targeting me with invisible tricks, with hypnotic or psychic-occult practices and with electronic zapping (several incidents I have reported to DC police and DC family court).

**9.**

In January, 2006 Judge Sessions III of Vermont District Court also stated that there was NO FINAL decision regarding my I-360 Application as a battered immigrant wife and for adjustment to status (Vermont District Court No. 2 05-cv-00002-wks, Lisenko v Chertoff).

**10.**

A defensive application for asylum under the Convention Against Torture, Unusual and Degrading Treatment, **which has NOT BEEN approved as official US law by Congress,** was also pending in Boston Immigration Court because I had made a short 2-day trip to visit my son without a re-entry document. I believe that **Judge Shapiro's "quasi-criminal" questionable decision and all subsequent related procedures are, therefore, NOT VALID**

5 of 9

29

**11.**

My claim to political refugee status, which I only mentioned in my dismissed Brief to the US Supreme Court (Docket 08-6585) I believe, **IS uniquely and derivatively valid** under the definition of a refugee which IS given in US statutory law passed by Congress – the **1948 Constitution of the International Refugee Organization,** 62 Stat.3037, 3049. My parents came to Canada as "victims of nazi persecution" and they were "persons outside of country of nationality subsequent to World War 2 and unable to avail themselves of that country's protection" (USSR) . I too ended up in Canada because of WW2. I also resided in Soviet Ukraine and was not able to "avail myself of that country's protection" . I was able to return to Canada and I became a Canadian national and then I was forced to leave because nobody in Canada would or could protect my rights.

**12.**

In 1972 I was detained in Kiev for pursuing my right to return to Canada and I spent a horrible week in a detention center for vagrants, then an even more intimidating week in a closed facility for the treatment of STD . Luckily, I could not be discredited because I had just submitted an excellent health report to the Canadian Embassy. In comparison with the 5 extremely humiliating years I spent living in a DC homeless shelter, those two weeks in Kiev, for me as a young naïve woman, were the most terrifying time of my life.

**13.**

I do not know if the justices of the US Supreme Court saw any of the 5 or 6 petitions and motions that I tried filing. Two were docketed and dismissed by the Clerk, I assume because the numerous questions that I asked require **congressional action** (Exhibits 30, 31)

**14.**

In January, 2009, I moved to Washington, DC, with the belief that if Vermont officials were obstructing or interfering with a fair resolution of my petitions, then surely officials and judges in the US capital would help me. Had my petitions to the Vermont and US Supreme Courts over-ruled my husband's "personal jurisdiction" defense (Docket 08-8712), which they had the authority to do under a US-Quebec Family Support Agreement(Exhibit 23b) I would not be in the humiliating financial position that I am in now. (One-sided, unpublished arguments by Vermont Supreme Court in case No.2007-487, Lisenko vs Osadchuk, were on website.)

**15.**

My letter to Perry Rhew of the Washington Office of the Administrative Appeals Office in which I requested a copy of the 2005 Approval Notice was returned with an unsigned formatted page indicating that no appeal was pending.

**16.**

The Office of the USCIS Ombudsman was not helpful, nor was DC Congresswoman Holmes-Norton; a certified letter to USCIS Chief of Investigations was never answered, nor was reception confirmed by that office or by US Post (reception of delivery card lost or destroyed?).

**17.**

My application for the Canada Pension was unjustly denied by federal officials in Quebec and I have not received a response to my request for a review under the US-Canada Social Security ~~Treaty~~ Agreement (Exhibit 27).   It is difficult not to conclude that my rejection of Canadian citizenship, my political beliefs in the correctness of the melting pot ideals of the USA and in the need to promote the unifying English language, not to suppress it as is unjustifiably done in Quebec, has also resulted in a form of administrative-bureaucratic-judicial violence against me.

**18.**

Nonetheless, I have not lost FAITH and I am in good physical and spiritual health, though the emotional trauma of my husband's bad faith marriage to me, the separation from my young adult children, relatives and friends, the moral degradation of the last ten years is irreparable.

**19.**

Lastly, I am eligible for US status as the sister of a US citizen who's petition has been approved (Exhibit 6), though as stressed before, had I intended to move to the USA previous to my forced move, I would have waited the ten year or more delay in the comfort of my Quebec home as a financially secure legally separated woman.   Only after the mistreatment my children and I suffered in Ottawa in 2000-2001, had I then written to the US Ambassador hoping that a political refugee claim could be made from inside Canada.

**20.**

During the past 6 years in the District of Columbia I have volunteered at the N Street Women's Center and as an independent observer and petitioner for changes in the " non-profit" rental housing sector, in the homeless shelters, for tax reforms that would alleviate the extreme gap between the very low-income and the wealthy in North America (Exhibits 32, 33), for improvements in the functioning of US courts(Exhibits 24, 25, 26) and the financial system (see Lisenko submissions to NYSD Bankruptcy Court in GM Ch.11 voluntary re-organization at www.motorsliquidationdocket .com), for accountability from medical professionals, dentists in particular (Exhibits 28,29) who overcharge and over treat or mistreat the public

**21.**

In conclusion , I wish to say that my promotion of the English language and bilingualism in Quebec, in opposition to the unilingual supremacist policies of the old guard Quebecois politicians, is a worthy and admirable cause (predicted in the Bible in regard to the Conversion of the Nations: *"For at that time I will change the speech of the peoples to a pure speech, that all of them may call upon the name of the Lord and serve him with one accord."* Zephaniah 3::9).

Had the French Charter, an instrument of enrichment for the pure and distinct French, been repealed perhaps we would not be now faced with the unilingual policies of the Ukrainian government in Kiev which has led to so much conflict and so many unnecessary deaths.

7 of 9

The Hutu-Tutsi atrocities too had a linguistic French vs English underpinning, as does the Arab vs Hebrew linguistic-religious conflict, though control of territory, power and enrichment through governance are always the real reasons for adopting laws and policies of exclusion.

For all the above-stated reasons which are supported by the annexed evidence and by previously submitted police reports, I pray for a positive retroactive decision of my I-290B appeal of Paul Novak's decision of April, 2005, on a cumulative basis and as a matter of kind discretion.

I declare under Oath and penalties of perjury that all the above-stated is true and written in good faith.

Signed in Washington , DC, on October 31 , 2014

Marianne Lisenko
1221 M Street NW, #834, Washington, DC 20005
Washington, DC 20005   Cell:202-210-2214,  email: listen2mary@hotmail.com

In front of Notary Public

District of Columbia: SS
Subscribed and Sworn before me
this 31 day of Oct, 2014

Brian K. Price-Notary Public, DC
My Commission Expires August 31, 2019

Annex:
Exhibits 1 to 35

List of Exhibits:   I-290B/Appeal to AAO

1  Blocked approval notice of I-290 Appeal, copy from National Records Service
2  Refund of I-290 appeal filing fee $110
3,4,5,6 Receipts for I-360, I-485, I-765 , approved I-130 application
7  Receipt for I-290B appeal action taken
8  Receipt for I-360, reopened by VT Service Center on Sept.19. 2005
9,10,11  Receipts for unjustly denied employment authorizations + travel permit for $525
12  Statement of Facts by Marianne Lisenko of September 22, 2005
13  Declaration of Marianne Lisenko of March 17,1992
14  Affidavit of Marianne Lisenko of January26, 2001
15  Affidavit of Marianne Lisenko of March 23, 2004
16  Affidavit of William Osadchuk, 2006
17  Affidavit of Lidia Pierce
18. Affidavit of Anna Safonova
19  Letter-rejection of April 18, 2005, signed by Director Paul Novak
20  Letter rejection of September 20, 2005, signed by Director Paul Novak
21  Sandra Bushey's letter of November 1, 2005, rejecting appeal to adjust
22a USCIS website status report re pending I-360
  b USCIS website status report re pending I-485
  c USCIS website status report re Approval of I-290B

23a Temporary Order of Spousal Maintenance, May 30, 2007, Vermont Family Court(vacated)
  b Letter re Vermont-Quebec Agreement on family support
  c Bad faith marriage agreement prepared by husband
  d Motion for Default Judgment in DC Family Court (dismissed)
  e Jurisdictional Statement and Reply in DC Family Court
  f Brief Statement… to DC Court of Appels
  g Notice of Withdrawal in DC Court of Appeals
24  Complaint about Judges of DC Courts
25  Acknowledgment by Chairwoman Gladys Kessler of DC judicial committee
26  Report of court observation in Kenda v Plescovic case, DC Family Court
27  Letter of June 6, 2014 re US-Canada Social Security Treaty
28  Letter re dental overcharge
29  Questions to dentists
30  Questions to US Supreme Court, case 08-6585, Lisenko v Mukasey
31  Questions to US Supreme Court, case 08-8712, Lisenko v Osadchuk
32  Questions to Congress, 2011
33  Questions for DC candidates for Mayor,   34- Last report to DC police, 35- Oath

# *Mary's Oath-Pledge*

I declare under Oath and penalties of perjury and at the risk of prematurely or forever losing my health, my mind, my body and my SOUL to death and destruction, should I deceive – or to be done to me tenfold as I have intentionally done to others in this lifetime or in another – that I ACT and I THINK in GOOD FAITH and I SPEAK and I WRITE the TRUTH to the best of my abilities, my knowledge and my beliefs.

And I have printed and signed my name

MARIANNE Lisenko _(signature)_

On this date 8-23-2013 in Washington, D.C

Witness' printed name, signature and date

_____

District of Columbia, DC

Subscribed and Sworn before me
this 23 day of Aug, 2013

_(signature)_
Brian K. Price-Notary Public, DC
My Commission Expires August 31, 2014



3 of 4

**Form I-797C, Notice of Action**

# THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| RECEIPT NUMBER<br>EAC-15-035-50600 | | | CASE TYPE I290B NOTICE OF APPEAL OR MOTION |
|---|---|---|---|
| RECEIVED DATE<br>November 6, 2014 | PRIORITY DATE | | PETITIONER<br>LISENKO, MARIANNE |
| NOTICE DATE<br>November 20, 2014 | PAGE<br>1 of 1 | | BENEFICIARY A097 649 034<br>LISENKO, MARIANNE |

MARIANNE LISENKO
1221 M STREET NW APT 834
WASHINGTON DC 20005

Notice Type: Receipt Notice

Fee Waived

**Receipt Notice-** This notice confirms that USCIS received your application or petition ("this case") as shown above.   If any of the above information is incorrect, please immediately call 800-375-5283 to let us know.  This will help avoid future problems.

This notice does not grant any immigration status or benefit, nor is it evidence that this case is still pending.  It only shows that the application or petition was filed on the date shown.

**Processing time -** Processing times vary by case type.  You can check our website at www.uscis.gov for our current "processing times" for this case type at the particular office to which this case is or becomes assigned.  On our website's "case status online" page, you can also view status or sign up to receive free e-mail updates as we complete key processing steps on this case.  During most of the time this case is pending, however, our systems will show only that the case has been received, and the processing status will not have changed, because we will be working on other cases that were filed earlier than this one.  We will notify you by mail, and show in our systems, when we make a decision on this case or if we need something from you.  If you do not receive an initial decision or update from us within our current processing time, check our website or call 800-375-5283.  Please save this notice, and any other notice we send you about this case, and please make and keep a copy of any papers you send us by any means, along with any proof of delivery to us.  Please have all these papers with you if you contact us about this case.

**If this case is an I-130 Petition -** Filing and approval of a Form I-130, Petition for Alien Relative, is only the first step in helping a relative immigrate to the United States.  The beneficiaries of a petition must wait until a visa number is available before they can take the next step to apply for an immigrant visa or adjustment of status to lawful permanent residence.  To best allocate resources, USCIS may wait to process I-130 forms until closer to the time when a visa number will become available, which may be years after the petition was filed.  Nevertheless, USCIS processes I-130 forms in time not to delay relatives' ability to take the next step toward permanent residence once a visa number does become available.  If, before final action on the petition, you decide to withdraw your petition, your family relationship with the beneficiary ends, or you become a U.S. citizen, call 800-375-5283.

**Applications requiring biometrics-** In some types of cases USCIS requires biometrics.  In such cases, USCIS will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing.  You must WAIT for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification.  Acceptable kinds of photo identification are: a passport or national photo identification issued by your country, a drivers license, a military photo identification, or a state-issued photo identification card.  If you receive more than one ASC appointment notice, even for different cases, take them both to your first appointment.

**If your address changes-** If your mailing address changes while your case is pending, call 800-375-5283 or use the "Online Change of Address" function on our website.  Otherwise, you might not receive notice of our action on this case.

NOTICE: Pursuant to the terms of the United States Immigration & Nationality Act (INA), the information provided on and in support of applications and petitions is submitted under penalty of perjury.  USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after adjudication to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the internet, or telephone, and site inspections of businesses and residences. Information obtained during the course of verification will be used to determine eligibility for the benefit sought. Applicants, petitioners, and representatives of record will be provided an opportunity to address derogatory information before any formal decision is made and/or proceeding is initiated.

---

Please see the additional information on the back.  You will be notified separately about any other cases you filed.

U.S. CITIZENSHIP & IMMIGRATION SVCS
VERMONT SERVICE CENTER
75 LOWER WELDEN STREET
SAINT ALBANS    VT    05479-0001
Customer Service Telephone: (800) 375-5283



---

Form I-797C  01/02/12 Y

**Please see the back of this notice for important information.**

35

## THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

| RECEIPT NUMBER<br>EAC-15-048-50053 | | CASE TYPE I765 APPLICATION FOR EMPLOYMENT AUTHORIZATION |
| --- | --- | --- |
| RECEIVED DATE<br>December 8, 2014 | PRIORITY DATE | APPLICANT    A097 649 034<br>LISENKO, MARIANNE |
| NOTICE DATE<br>December 10, 2014 | PAGE<br>1 of 1 | |

| | |
| --- | --- |
| MARIANNE LISENKO<br>1221 M STREET NW APT 834<br>WASHINGTON DC 20005 | Notice Type: Receipt Notice<br><br>Fee Waived<br>Class requested: C31 |

Receipt Notice- This notice confirms that USCIS received your application or petition ("this case") as shown above. **If any of the above information is incorrect, please immediately call 800-375-5283 to let us know.** This will help avoid future problems.

This notice does not grant any immigration status or benefit, nor is it evidence that this case is still pending. It only shows that the application or petition was filed on the date shown.

Processing time - Processing times vary by case type. You can check our website at www.uscis.gov for our current "processing times" for this case type at the particular office to which this case is or becomes assigned. On our website's "case status online" page, you can also view status or sign up to receive free e-mail updates as we complete key processing steps on this case. During most of the time this case is pending, however, our systems will show only that the case has been received, and the processing status will not have changed, because we will be working on other cases that were filed earlier than this one. We will notify you by mail, and show in our systems, when we make a decision on this case or if we need something from you. If you do not receive an initial decision or update from us within our current processing time, check our website or call 800-375-5283. Please save this notice, and any other notice we send you about this case, and please make and keep a copy of any papers you send us by any means, along with any proof of delivery to us. Please have all these papers with you if you contact us about this case.

If this case is an I-130 Petition - Filing and approval of a Form I-130, Petition for Alien Relative, is only the first step in helping a relative immigrate to the United States. The beneficiaries of a petition must wait until a visa number is available before they can take the next step to apply for an immigrant visa or adjustment of status to lawful permanent residence. To best allocate resources, USCIS may wait to process I-130 forms until closer to the time when a visa number will become available, which may be years after the petition was filed. Nevertheless, USCIS processes I-130 forms in time not to delay relatives' ability to take the next step toward permanent residence once a visa number does become available. If, before final action on the petition, you decide to withdraw your petition, your family relationship with the beneficiary ends, or you become a U.S. citizen, call 800-375-5283.

Applications requiring biometrics- In some types of cases USCIS requires biometrics. In such cases, USCIS will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing. You must WAIT for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification. Acceptable kinds of photo identification are: a passport or national photo identification issued by your country, a drivers license, a military photo identification, or a state-issued photo identification card. If you receive more than one ASC appointment notice, even for different cases, take them both to the first appointment.

If your address changes- If your mailing address changes while your case is pending, call 800-375-5283 or use the "Online Change of Address" function on our website. Otherwise, you might not receive notice of our action on this case.

NOTICE: Pursuant to the terms of the United States Immigration & Nationality Act (INA), the information provided on and in support of applications and petitions is submitted under penalty of perjury. USCIS and the U.S. Department of Homeland Security reserve the right to verify this information before and/or after adjudication to ensure conformity with applicable laws, rules, regulations, and other authorities. Methods used for verifying information may include, but are not limited to, the review of public information and records, contact by correspondence, the internet, or telephone, and site inspections of businesses and residences. Information obtained during the course of verification will be used to determine eligibility for the benefit sought. Applicants, petitioners, and representatives of record will be provided an opportunity to address derogatory information before any formal decision is made and/or proceeding is initiated.

Please see the additional information on the back. You will be notified separately about any other cases you filed.

U.S. CITIZENSHIP & IMMIGRATION SVCS
VERMONT SERVICE CENTER
75 LOWER WELDEN STREET
SAINT ALBANS    VT    05479-0001
**Customer Service Telephone: (800) 375-5283**



Please see the back of this notice for important information.

Form I-797C  01/02/12 Y

36

THIS NOTICE DOES NOT GRANT ANY IMMIGRATION STATUS OR BENEFIT.

Case 1:15-cv-01048-RBW  Document 1  Filed 07/02/15  Page 50 of 81

Form I-797C, Notice of Action

| NOTICE TYPE | | | NOTICE DATE |
|---|---|---|---|
| Rejection Notice | | | December 05, 2014 |
| **CASE TYPE** | | | **USCIS ALIEN NUMBER** |
| I-290B, Notice of Appeal or Motion | | | A097649034 |
| **RECEIPT NUMBER** | **RECEIVED DATE** | **DATE OF BIRTH** | **PAGE** |
| EAC1590104479 | November 18, 2014 | | 1 of 1 |

APPLICANT/PETITIONER NAME AND MAILING ADDRESS

MARIANNE LISENKO
C/O MARIANNE LISENKO
1221 M STREET NW APT 834
WASHINGTON, DC  20005

This is in reference to the I-290B, Notice of Appeal or Motion, you submitted.  Your I-290B, fees, and any supporting documentation is being returned to you for the following reason(s):

The check amount is incorrect, or has not been provided.  Please review the Form Instructions for fee information. Please resubmit the application/petition package with the appropriate fees to the address listed on the bottom of this page.

Based on the current USCIS Fee Schedule, the application/petition that you filed is not eligible for a fee waiver.  For a list of applications and petitions that can be considered for a fee waiver request please refer to the Instructions for Form I-912, Request for a Fee Waiver.

Please be sure to complete the petition fully, submit the appropriate fees, and include all required supporting documentation.

If you have questions about possible immigration benefits and services, filing information, or USCIS forms, please call the USCIS National Customer Service Center (NCSC) at 1-800-375-5283. If you are hearing impaired, please call the NCSC TDD at 1-800-767-1833. Please also refer to the USCIS website: www.uscis.gov.

If you have any questions or comments regarding this notice or the status of your case, please contact our customer service number.

You will be notified separately about any other case you may have filed.

| USCIS OFFICE ADDRESS | USCIS CUSTOMER SERVICE NUMBER |
|---|---|
| USCIS | (800)375-5283 |
| P. O. Box 21100 | APPLICANT COPY |
| Phoenix, AZ 85036 |  |

TRN# 3014158958280     BIN# 3907453

If this is an interview or biometrics appointment notice, please see the back of this notice for important information.     Form I-797C  07/11/14 Y

37

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Marianne Lisenko,           :
         Plaintiff,         :
                            :
    v.                      :        File No. 2:05-CV-2
                            :
Michael Chertoff,           :
Secretary of the            :
Department of Homeland      :
Security,                   :
         Defendant.         :

OPINION AND ORDER
(Papers 3 and 5)

This action arises out of plaintiff Marianne
Lisenko's attempt to re-enter the United States in July,
2004. Lisenko, a Canadian citizen currently residing in
Vermont, was denied re-entry after a brief visit to
Canada. Lisenko nonetheless drove across the border and
entered the United States without permission. As a
result of her unlawful re-entry, Lisenko was apprehended
by law enforcement, ordered to appear at a removal
proceeding, fined, and released on her own recognizance.
Lisenko, proceeding *pro se*, now brings this action
claiming, in part, that her Canadian passport and United
States immigration I.D. card have been wrongfully
withheld. She also seeks the invalidation of the $500
fine, and an expedited decision with respect to her

application for permanent United States residency.
Lisenko further asks the Court to provide
"[r]ecommendations, as deemed appropriate, in regard to
the easily abused endless mass of everchanging
immigration laws, regulations and directives" and to
establish "a US-led Commission to investigate and
compensate victims for the effects of Quebec's invisible
campaign of ethnic cleansing and of administrative
judicial abuse."

The government has filed a motion to dismiss,
arguing that the Court lacks subject matter jurisdiction
over Lisenko's claims.  Specifically, the government
claims that Lisenko is in the midst of immigration
proceedings and has failed to exhaust her administrative
remedies.  The government also asserts that the Court has
no power to change immigration laws or form commissions
to investigate Canadian affairs.  Finally, the government
contends that Lisenko's documents should not be returned
to her because they are relevant to her administrative
proceedings.  For the reasons set forth below, the motion
to dismiss is GRANTED.

2

## Factual and Procedural Background[1]

Lisenko is a Canadian citizen who has been living in Vermont since March 20, 2003.  She is a registered alien with a U.S. social security number, Vermont driver's license, Vermont vehicle registration and Burlington residence.  In October, 2003 she filed an Application as a Battered Spouse (I-360) and an Application to Adjust Status to a Lawful Permanent Resident (I-485) with the U.S. Citizenship and Immigration Services ("CIS") office in St. Albans, Vermont.  She also applied for, and was issued, an employment authorization document.

On July 26, 2004, Lisenko was returning to Vermont "after an urgent weekend visit with my son in Quebec." When she arrived at the port of entry in Highgate Springs, Vermont, it was determined that she had not obtained the necessary approval for re-entry prior to leaving the United States.  See 8 U.S.C. § 182(d)(5)(A);

---

[1]  Because subject matter jurisdiction is at issue, the facts are taken both from the plaintiff's complaint and from submissions by the government.  See APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003) (when jurisdiction is in question, court may decide issues of fact by reference to evidence outside the pleadings, such as affidavits); Kamen v. American Telephone and Telegraph Co., 791 F.2d 1006, 1011 (2d Cir. 1986) (when subject matter jurisdiction is challenged under Rule 12(b)(1), evidence may be presented by affidavit or otherwise).

40

8 C.F.R. 212.5(f).  She was therefore denied re-entry but refused to return to Canada.  Shortly thereafter, Lisenko left the port of entry without authorization, leaving behind her employment authorization document and Canadian passport, and re-entered the United States.

A Customs and Border Protection officer notified the Border Patrol of Lisenko's illegal entry, and Border Patrol Agent Brian Rossi stopped Lisenko's car on I-89 in Vermont.  Lisenko admitted that she was a Canadian citizen, that she had been refused entry into the United States, and that she had driven off leaving her documentation behind.  Lisenko was ultimately persuaded to return to the border, but still refused to return to Canada.

Lisenko was then taken to the Swanton Border Patrol Station where border patrol agents prepared a Notice to Appear, thereby placing Lisenko in removal proceedings. The Notice to Appear alleged that Lisenko was present in the United States without having been admitted, and that she was subject to removal for lack of admission and lack of valid entry documentation.  Lisenko was released on her own recognizance and ordered to appear before the

Immigration Court in Boston, Massachusetts on September 29, 2004.

As a result of her unauthorized departure from the Highgate Springs port of entry, Lisenko was also fined $5,000. In response, she submitted a "Request to Dismiss Demand for Payment of $5,000 Fine" citing, *inter alia*, family issues and her intent to become a U.S. citizen. The fine was reduced to $500. Lisenko continued to challenge the fine, charging border patrol officers with misconduct that included efforts to hypnotize her. She also asked for the return of her documents. Her challenge was denied.

On September 29, 2004, pursuant to the Notice to Appear, Lisenko appeared *pro se* before the Immigration Court in Boston. The matter was continued while Lisenko sought counsel, and another hearing was held on November 22, 2004. A third hearing was scheduled for May 25, 2005. There is no evidence in the record showing that the removal proceedings in Boston have concluded.

As noted above, Lisenko has also submitted an Application as a Battered Spouse and an Application for Adjustment of Status to the CIS office in St. Albans,

5

905    42

Vermont.  Again, there is nothing in the record
indicating that there has been a final decision on these
applications.  Finally, while this case has been pending,
Lisenko has filed an application for asylum and for
withholding of removal.

### Discussion

The government has moved to dismiss for lack of
subject matter jurisdiction.  With respect to Lisenko's
removal proceedings, the Immigration and Nationality Act
("INA") provides that a court may review a final order
only if "(1) the alien has exhausted all administrative
remedies available to the alien as of right, and (2)
another court has not decided the validity of the order .
. . ."  8 U.S.C. § 1252(d).  In this case, it appears
that Lisenko's administrative remedies have not been
exhausted.  The government argues that Lisenko must apply
for asylum if she want to challenge her removal, and the
record shows that Lisenko has done so.  8 U.S.C. § 1158;
(Paper 4-9).  An asylum application is heard by an
Immigration Judge, whose decision is reviewable on appeal
by the Board of Immigration Appeals.  8 C.F.R. §
1003.1(b)(9).  Judicial review of the Board of

6

Immigration Appeals is conducted by the applicable Court of Appeals.  8 U.S.C. § 1252(b)(2).  Therefore, regardless of the stage of exhaustion, this Court has no jurisdiction to review Lisenko's removal proceeding.

Other proceedings in which Lisenko is involved are not subject to judicial review.  Those proceedings include Lisenko's application for adjustment of her status to a legal United States resident.  See 8 U.S.C. § 1252(a)(2)(B)(I) ("Notwithstanding any other provision of law, no court shall have jurisdiction to review – (i) any judgment regarding the granting of relief under . . . [8 U.S.C. § 1255, adjustment of status]).  Lisenko's $500 civil penalty is similarly free from judicial review.  Lisenko is not challenging the underlying legality of the civil penalty, and is essentially contesting the agency's decision not to further mitigate her penalty.  Such mitigation-related decisions are not reviewable.  See Lyng Motors & Service v. United States, 923 F. Supp. 356, 358 (E.D.N.Y. 1996 (citing Trayco, Inc. V. United States, 994 F.2d 832, 838 (Fed Cir. 1993)).[2]

---

[2]  The government also argues that Lisenko's challenge is not ripe because there has been no effort to collect on the debt.  This argument appears to be misplaced, since Lisenko alleges, and the government's exhibits confirm, that the debt has been

7

The Court is also without authority to address Lisenko's request for "recommendations" with respect to immigrations laws. If Lisenko is seeking legal advice as to how to proceed with her immigration law issues, a court cannot provide such advice. See, e.g., Pliler v. Ford, 124 S. Ct. 2441, 2446 (2004) (advising pro se litigant would undermine court's role as impartial decisionmaker). If Lisenko is calling on the Court to make changes to existing immigration laws, her request must be denied since it is Congress, and not the judiciary, that has the power to enact, alter or repeal legislation. See Fiallo v. Bell, 430 U.S. 787, 792 (1977). Nor can the Court form a commission to investigate complaints, particularly when the facts, as here, pertain to conduct in another country.

Lisenko's final request is for the return of her expired Canadian passport and "US immigration ID card." With respect to the passport, the government argues that

---

referred to the IRS Offset Program. Nonetheless, that program allows Lisenko to challenge the proposed offset administratively. See 31 U.S.C. § 3720A. "Where relief is available from an administrative agency, the plaintiff is ordinarily required to pursue that avenue of redress before proceeding to the courts; and until that recourse is exhausted, suit is premature and must be dismissed." Reiter v. Cooper, 507 U.S. 258, 269 (1993) (citations omitted).

"the disposition of an alien's passport must await the result of pending Removal Proceedings." (Paper 3 at 18, citing Onwubiko v. United States, 969 F.2d 1392, 1398 (2d Cir. 1992), overruled on other grounds by Polanco v. U.S. Drug Enforcement Admin., 158 F.3d 647, 651 (2d Cir. 1998)). The government has also moved for summary judgment on this issue, arguing that the documents sought are relevant to the removal proceeding.[3]

The removal proceeding was initiated by a Notice to Appear, which alleged that Lisenko was "an immigrant not in possession of a valid unexpired immigrant visa, re-entry permit, border crossing card, or other valid entry document required by the [INA]." (Paper 3-5 at 4). Lisenko's documentation at the time of her attempted re-entry included her employment authorization card, which the government asserts was not valid for re-entry. This card is, therefore, relevant to the removal proceeding and may be retained by the government along with Lisenko's expired Canadian passport. See Lovelace v. United States, 2001 WL 984686, at *4 (S.D.N.Y. Aug. 27, 2001) (citing cases).

---

[3] The government has provided the notice to *pro se* litigants opposing summary judgment required by Local Rule 7.1(c)(6).

9

46

<u>Conclusion</u>

For the reasons set forth above, the government's motion to dismiss (Paper 3) is GRANTED, and this case is DISMISSED without prejudice.  Lisenko's motion for appointment of counsel (Paper 5) is DENIED as moot.

Dated at Burlington, in the District of Vermont, this 18th day of January, 2006.


/s/ William K. Sessions III
William K. Sessions III
Chief Judge, United States District Court

U.S. Department of Justice
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

========================================================================

File:  A97-649-034 - Boston

Date:

In re: LISENKO, MARIANNE

APR 1 6 2007

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Pro se

ORDER:

PER CURIAM. We adopt and affirm the decision of the Immigration Judge with the following clarification. See Matter of Burbano, 20 I&N Dec. 872, 874 (BIA 1994) (noting that adoption or affirmance of a decision of an Immigration Judge, in whole or in part, is "simply a statement that the Board's conclusions upon review of the record coincide with those the Immigration Judge articulated in his or her decision"). Regarding the respondent's persecution and torture claims, although the Immigration Judge found the respondent not credible, we affirm the Immigration Judge's alternative finding that, even taking as true the respondent's testimony, the facts presented do not meet the respondent's burden of establishing past persecution or a well-founded fear or clear probability of persecution on account of a protected ground or torture. See sections 208 and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158, 1231(b)(3); see also 8 C.F.R. § 1208.16(c). As we find that the respondent has not shown sufficient basis to disturb the Immigration Judge's determination that she has not established that she is statutorily eligible for asylum, we find it unnecessary to address the Immigration Judge's further finding that the respondent does not deserve relief in the exercise of discretion. We also note that we are without authority to entertain the respondent's arguments regarding immigration policy and the constitutionality of immigration laws. See Matter of C-, 20 I&N 529, 532 (BIA 1992). As to the remainder of the respondent's contentions, she has not shown that the Immigration Judge's decision was clearly erroneous, or raised aspects specific to her case that warrant a reversal of the Immigration Judge's decision. Accordingly, the appeal is dismissed.

FOR THE BOARD

niA - DISMISSED 4/16/07

Superior Court of Quebec
District of St.Hyacinthe
1550 rue Dessaulles
St.Hyacinthe, QC   J2S 2S8       No.750-17-002605,    Osadchuk v Lisenko

## REQUEST FOR ENGLISH LANGUAGE FILINGS/EXHIBITS, PROCEEDINGS. AFFIDAVIT

1.Artices 7(4), 91 and 92 of the Charter of the French Language permit the use of English or French in any court of Quebec, including the drafting of documents and texts.

2. Defendant Lisenko and Plaintiff Osadchuk are English speakers. I , the Defendant, am also a resident of Washington, DC, USA, who was forced to leave the marriage and the family home in Quebec, because I feared for my life and I did not believe I would be treated fairly in any Quebec or Canadian court, as demonstrated by several official attempts to remedy injustices that my children, my mother and I were subjected to.

3. The commenced proceedings for determination of the propriety and validity of Osadchuk-Lisenko real estate transactions and registrations in Quebec, and related family law issues, have international inter-jurisdictional significance and require the use of English, the universally accepted global language of communication, commerce, arbitration and EQUITABLE common sense justice.

4. Plaintiff Osadchuk's acquiescence to use French language filings speaks either of his fear to request English language proceedings or his expectation that by using French he will have preferential treatment.

5. To date I remain stateless and indigent, without the ability to travel or prove my identity with valid documents , or to have my signature certified by an authorized person.

1 of 4

49

6.  To resolve the contentious procedural aspect of certification of an Affidavit by a Notary Public or Commissioner of Oaths, who cannot guarantee the truthfulness of statements made and which is not required under US federal court procedures, I am submitting a serious personal Oath of moral-spiritual value and authority (see following page 3), as well as the Affidavit below.

7. On the basis of all the above , I pray that the court order to file the introductory submission and all exhibits in the English language.

Signed in Washington, DC, on April 23, 2015

MARIANNE LISENKO _____

## AFFIDAVIT

I, Marianne Lisenko, residing at 1221 M Street NW, apt.834, in Washington, DC, USA, 20005, declare under Oath and penalties of perjury that I am the Defendant in this case and that all the statements made in the document REQUEST FOR ENGLISH LANGUAGE COURT FILINGS/ EXHIBITS, PROCEEDINGS. AFFIDAVIT are true.

Signed in Washington, DC, on April 23, 2015

MARIANNE LISENKO_____
1221 M Street NW, #834,
Washington, DC, 20005
202-210-2214          (Following on p.3-Oath,  p.4-Certificates of Service)

Copy by fax **514-866-8854** to:
Francois Guimont,
DUNTON RAINVILLE BARRISTERS
800 Square Victoria, 43rd Floor
Montreal, QC, H4Z 1H1

50

May 1, 2007

Eric Lecours, Notary
905 avenue de Palais
St.Hyacinthe, QC J2S 5C6
Canada

Dear Mr. Lecours,

This is a follow-up of my telephone message of April 29, 2007, in regard to transactions that my husband  Boris Osadchuk and I had with you in regard to our family residence  located at 1996 Haut de la Riviere Sud in St. Pie, Quebec.

I have been living in Vermont for the last four years and I was unable to address what appears to have been legal-administrative improprieties in regard to the registrations of the title to that residence and in regard to the registration of clearances of all mortgages.  I had seen the real estate registry book entries several times over the years and I have no doubt that the last entries that I saw in 2002 , at the advise of Yolaine Lindsay, were a rewritten version.

I remember distinctly that in the summer of 1997 I had completed paying off the first property mortgage with what was then a Scotia  Bank branch in Granby (It became a branch of the Laurentian Bank some time after the year 2000.)  I was advised by the bank to get a legal document of clearance – in Quebec it is called the Quittance.  I had carefully put that document into a filing cabinet and I believed the matter was settled with the bank and the real estate registry.

I also remember verifying  the real estate record shortly after my husband transferred title of the house to me in 1987.  I was upset that he had omitted to tell me that there was another $250 000 mortgage that he took out against the house with the Banque Nationale.  The first entry for lot 750-1 was a mortgage of $75 000.00.  I made photocopies of those entries before and after my husband paid off the mortgage to the Banque Nationale.  All those copies, as well as my Quittance disappeared… (These "disappearances" of personal papers , documents and objects, may I add, had started in 1998, after I filed several petitions seeking remedies for the different forms of mistreatment of me and members of my family by Quebec authorities.  The  "disappearances" (and often "reappearances") continued in Ottawa after I moved there to improve my children's educational opportunites, they continued in St. Pie after I moved back from Ottawa to Quebec, and in Burlington, Vermont, to where I fled in fear that I would be killed, driven insane or driven to commit suicide.  I am happy to say that during this past year the incidents, most of which I believe are some form or other of  hypnotic, illusionary, telekinetic or "magic" cruel trickery, if not outright petty theft and deception, etc.  – have been very few.  Perhaps this is due to the fact that my ability to detect them, to stop and to ignore them has greatly improved.)

1

51

But let me return to the facts regarding the property. We moved into the unfinished house that was built on lot 750-1 on February 14, 1982. My husband had bought the property with a $5000.00 down payment for the balance of the first mortgage, which I believe was $58 000. Interest rates were at an astronomical high that year at around 20% and there were no buyers for what I now understand was a stigmatized property…

Before leaving Quebec, I contacted notary Richard Henault and I explained the circumstances. He promised to investigate the matter with the bank and to make sure that all the necessary documentation is in order. In July, 2004, I made a short visit to St. Pie and I saw a bill for work notary Henault did. I asked my son to make sure his father would either pay the bill or make his objections to all that has been happening… (Specifically, the unusual financial hardship that has been caused to me and the overcharging that my husband , as a skilled immigrant and businessman, has probably experienced throughout his life in Quebec.)

My husband refuses and has always refused to discuss any legal-financial matters with me and I have no choice but to suspect bad faith on his part.

What role did Eric Lecours play in the dealings with Boris Osadchuk and the property in question, and at who's initiative?

What did notary Richard Henault discover and is the property clear of all debts?

I pray for written statements that the property is clear of all debt and that my family will not be charged twice for a simple document (and the web of deception surrounding it, unless my husband paid for that deception with the deliberate intent to leave me penniless, rejected and emotionally disabled.)

This is a request for an inquiry and I am sending this letter to the Chambre des Notaries du Quebec and to notary Richard Henault. I am hopeful that a serious investigation will take place and that all those concerned will answer under oath to written interrogatories.

My sincere thanks for your diligent attention to all the above.

Respectfully,

*true copy* [signature]

Marianne Lisenko
P.O.Box 1431
Burlington, VT 05402 USA          Encl. Internet copy of property registry page

Copies to: Chambre des notaires du Quebec, 1801 McGill College, suite 600,
          Montreal, Quebec  H3A 0A7
          Richard Henault, notary in St.Pie, QC

2

52



Dear Pat:
Here is the
article. We
have her new
address and
we know where
she'll be later
this month.
We'll get her
there.
Eric

BURLINGTON VT 054

14 OCT 2012 PM 2 T

M. Lisenko
1333 N Street   N.W.
WASHINGTON, D.C.

53

PD 251

Capitol File Number 150330000160£

UNITED STATES CAPITOL POLICE
WASHINGTON, DC
EVENT REPORT

| 1. TYPE OF REPORT | 2. CCN # |
|---|---|
| ☑ OFFENSE   ☐ INCIDENT | 15 057-710 |

| 3. EVENT CLASSIFICATION | 4. EVENT LOCATION | 5. BEAT | 6. DIST | 7. RA |
|---|---|---|---|---|
| THEFT 2 | 100 Constitution Ave, NE–Dirksen Senate Office Building | N/A | 1D | N/A |

| 8. DATE/TIME OF EVENT | 9. DATE/TIME OF REPORT | 10. RADIO RUN RECEIVED | 11. ☑ PUBLIC PROPERTY |
|---|---|---|---|
| 3/25/2015 1715-1800 hrs | 3/30/2015 1505 hrs | ☑ NO  ☐ YES, TIME_____ | ☐ PRIVATE PROPERTY |

| 12. DESCRIBE LOCATION | 13. WHERE ENTERED | 14. TOOLS, WEAPONS USED | 15. METHOD |
|---|---|---|---|
| SW Entrance-Door | N/A | N/A | N/A |

| 16. COMPLAINANT/MISSING PERSON/FIRM | SEX/RACE/DOB | 16. COMPLAINANT/MISSING PERSON/FIRM | SEX/RACE/DOB |
|---|---|---|---|
| l. LISENKO, Marianne | F/W 5/16/1948 | 2. N/A | N/A |

| 17. HOME ADDRESS | 18. HOME PHONE | 17. HOME ADDRESS | 18. HOME PHONE |
|---|---|---|---|
| 1221 M Street, NW apt 834, WDC 20005 | 202-210-2214 | N/A | N/A |

| 19. BUSINESS ADDRESS/SCHOOL | 20. BUSINESS PHONE | 19. BUSINESS ADDRESS/SCHOOL | 20. BUSINESS PHONE |
|---|---|---|---|
| N/A | N/A | N/A | N/A |

| 21. ADDITIONAL MEANS TO CONTACT COMPLAINANTS OR REPORTING PERSON | 22. REPORTED BY | 23. RELATION TO COMPLAINANT |
|---|---|---|
| N/A | C-1 | |
| | 24. ADDRESS | 25. PHONE NUMBERS |
| | C-1 | Hm: C-1    Bus: N/A |

| 26. SICK/INJURED PERSON | 27. DESCRIBE INJURY | 28. WHERE TAKEN/BY WHOM | 29. ☐ ADMITTED |
|---|---|---|---|
| 1. N/A | N/A | N/A | ☐ RELEASED |
| 2. N/A | N/A | N/A | ☐ ADMITTED  ☐ RELEASED |

| 30. PROPERTY CODES: | (S) STOLEN   (R) RECOVERED   (L) LOST   (I) IMPOUNDED   (V) VEHICLE FROM WHICH THEFT OCCURRED   (E) EVIDENCE   (F) FOUND   (O) OTHER | 31. PROPERTY BOOK AND PAGE # |
|---|---|---|
| | | N/A |

| CD | ITEMS | SER. NO/OP. I.D. # | COMP. VALUE | AGE | MPDC VALUE |
|---|---|---|---|---|---|
| S | black purse (containing items listed below) | UNK | $30.00 | UNK | $15.00 |
| S | wallet | UNK | $20.00 | UNK | $10.00 |
| S | Wells Fargo Bank Card | UNK | N/A | N/A | $.25 |
| S | (3) 4GB Flashdrives | UNK | $21.00 | UNK | $10.50 |
| S | miscellaneous personal items | N/A | N/A | N/A | N/A |

| YEAR | MAKE | MODEL | COLOR | BODY | TAG/STATE/YEAR | VIN. # |
|---|---|---|---|---|---|---|
| N/A | N/A | N/A | N/A | N/A | N/A | N/A |

| 32. EVIDENCE TECH. NOTIFIED/CSS # | 33. INVESTIGATOR NOTIFIED | 34. SUPERVISOR NOTIFIED | 35. TELETYPE NOTIFIED | 36. TOTAL VALUE |
|---|---|---|---|---|
| N/A | S/As LONG & Hardy | N/A | N/A | $35.75 |

| 37. ☑ SUSPECT ☐ MIS PERSON | RACE | SEX | AGE | HEIGHT | WEIGHT | EYES | HAIR | COMPLEX | SCARS | HAT | COAT | JACKET | PANTS | SHIRT |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | UNK | UNK | UNK | UNK | UNK | UNK | UNK | UNK | UNK | UNK | UNK | UNK | UNK | UNK |
| 37. ☐ SUSPECT ☐ MIS PERSON | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A | N/A |

38. NARRATIVE: DESCRIBE THE EVENT AND STATE POLICE ACTION TAKEN

30. (continued)
S--human tooth with some type of metal filling in a small plastic bag

On 3-25-15, C1 stopped RO 1, RO 2, and RO 3 while on patrol in the Dirksen Senate Office Building. C1 had reported that her black purse was left last seen in a restroom in the Dirksen Building. C1 then stated that she went to a committee hearing and was there for approximately 40 minutes when realized she didn't have her purse. C1 stated she went back to the restroom to look for her purse and it wasn't there. CID Hayden was notified of the incident.

☐ See Missing Person Information on Reverse          ☐ See Continuation on Reverse

| 39. REPORTING OFFICER | BADGE/ORG ELM | 40. SECOND OFFICER | BADGE/ORG ELM | 41. TELETYPE NUMBER |
|---|---|---|---|---|
| DELASSO, A | 6768/S3 | N/A | | N/A |

| 42. STATUS | | |
|---|---|---|
| ☑ OPEN | ☐ PRIOR CLOSED | ☐ CLOSED (If closed by arrest attach PD 252 and arrest # here) |
| ☐ UNFOUNDED (EXPLAIN IN ITEM 12) | ☐ SUSPENDED (EXPLAIN IN ITEM 13) | |

| 43. REPORT REVIEWER OFFICER | 44. SUPERVISOR | BADGE/ORG ELM | 45. REVIEWER | 46. DISTRIBUTION |
|---|---|---|---|---|
| | TYSON, Contricia | 4401/RPS | | |

54

# U. S. Citizenship and Immigration Services

TEXT ONLY   HOME   WHAT'S NEW   FAQs   SEARCH   GLOSSARY   FEEDBACK   TRANSLATE   PRINTPAGE

**Immigration Services and Benefits**

National Customer Service Call Center (NCSC)

  Call Scripts and Information

  Case Status Online

    Case Status Search

    Register

    Login

    Case Status FAQs

## Case Status

Receipt Number: EAC0401352765

Application Type: I360, PETITION FOR AMERASIAN, WIDOWER, OR SPECIAL IMMIGRANT

Current Status:

On September 19, 2005, this case was reopened on a USCIS motion, and the case is now in process. We will mail you a decision as soon as processing is complete. You can use our processing dates to estimate when this case will be done. Follow the the link below for current processing dates.

You can choose to receive automatic case status updates, which will be sent via email. Please click here to create an account online.

If you would like to see the Processing Dates for Applications and Petitions, click here.

Note: Case Status is available for Applications and Petitions which were filed at USCIS Service Centers. If you filed at a USCIS Local Office, your case status may not be reviewable online but for processing times on forms filed at that Office please, click here.

If you have a question about case status information provided via this site, or if you have not received a decision or advice from the USCIS within the projected processing time frame, please contact the National Customer Service Center at (800) 375 - 5283 or 1-800-767-1833 (TTY).

> New Search

> Printer Friendly Case Status

Get Acrobat Reader

09-16-2006 12:04 PM EDT

*ML-976*



**U.S. Citizenship
and Immigration
Services**

Home | Español | Site Map

Search [              ]  [Search]

FORMS    NEWS    RESOURCES    LAWS    OUTREACH    ABOUT US

- Check My Case Status
- Sign-in to My Account
- Sign-up for Case Updates
- Check Processing Times
- Change Of Address Online
- e-Request
- Office Locator

## My Case Status

Para tener acceso a este sitio en Español, presiona aquí

### Your Current Case Status for Form I290B, NOTICE OF APPEAL TO THE COMMISSIONER

I-290B ←
M.Lisenko of

Enter your receipt number
[eac0517250099]
[Check Status]

Acceptance    Initial Review    Decision    Post Decision Activity

Your Case Status:
Post Decision Activity

EAC 0517250099

**Post Decision Activity**

On September 20, 2005, we mailed you a notice that we have approved this I290B NOTICE OF APPEAL TO THE COMMISSIONER. Please follow any instructions on the notice. If you move before you receive the notice, call customer service at 1-800-375-5283.

For approved applications/petitions, post-decision activity may include USCIS sending notification of the approved application/petition to the National Visa Center or the Department of State. For denied applications/petitions, post-decision activity may include the processing of an appeal and/or motions to reopen or reconsider and revocations.

You can register for automatic case status updates by email and text message by creating an account.
To submit a service request for an inquiry for an application please click e-Request.

### Processing Times

**1). Select a form type**
[Select one...        ▼]
[Next]    [Reset]

View national volumes and trends for all applications

**USCIS Privacy Act Statement**

**Case Status Online**

**Authority:** The information requested by My Case Status is collected pursuant to the Immigration and Nationality Act of 1952, Public Law 82-414, as amended.

**Purpose:** The primary purpose for collecting your case receipt number is to provide you with a status update and estimated processing times for a pending immigration benefit application or petition.

**Routine Uses:** The information may be used by and disclosed to DHS personnel and contractors or other agents who need the information to assist in activities related to providing status information on a pending immigration benefit application or petition. Additionally, DHS may share the information with law enforcement or other government agencies as necessary to respond to potential or actual threats to national security pursuant to the agency's published Privacy Policy and the routine uses outlined in the Benefits Information System system of records notice, DHS-USCIS-007, September 29, 2008 73 FR 56596.

**Disclosure:** The information you provide is voluntary. However, failure to provide the requested information may prevent USCIS from providing a status update on your pending case.

**OMB control no. 1615-0080**

**Expiration date 6-30-2012**

Contact Us
Site Map (Index)
Careers at USCIS
Adobe PDF Reader

White House.gov
US Department of State
USA.gov

U.S. Department of Homeland Security
US Customs & Border Patrol
US Immigration & Customs Enforcement

Freedom of Information Act (FOIA)
No FEAR Act
Website Policies
Privacy Policy

5/7/2014

https://egov.uscis.gov/cris/Dashboard/CaseStatus.do;jsessionid=abcNKMGtAaYPd4NMymr...    5/7/2014

56

# U. S. Citizenship and Immigration Services

TEXT ONLY    HOME    WHAT'S NEW    FAQS    SEARCH    GLOSSARY    FEEDBACK    TRANSLATE    PRINTPAGE

**Immigration Services and Benefits**

National Customer Service Call Center (NCSC)

Call Scripts and Information

Case Status Online

Case Status Search

Register

Login

Case Status FAQs

## Case Status

Receipt Number: EAC0401352532

Application Type: I485, Application to Register Permanent Residence or to Adjust Status

Current Status:

On February 8, 2005, the results of your fingerprint review for your I485 Application to Register Permanent Residence or to Adjust Status were received, and processing has resumed on your case. We will mail you a notice if further action is needed, or when a decision is made.

You can choose to receive automatic case status updates, which will be sent via email. Please click here to create an account online.

If you would like to see the Processing Dates for Applications and Petitions, click here.

Note: Case Status is available for Applications and Petitions which were filed at USCIS Service Centers. If you filed at a USCIS Local Office, your case status may not be reviewable online but for processing times on forms filed at that Office please, click here.

If you have a question about case status information provided via this site, or if you have not received a decision or advice from the USCIS within the projected processing time frame, please contact the National Customer Service Center at (800) 375 - 5283 or 1-800-767-1833 (TTY).

[ New Search ]

[ Printer Friendly Case Status ]



**09-16-2006 12:01 PM EDT**

ML-97 a

**Notice of Action**

## THE UNITED STATES OF AMERICA

| RECEIPT NUMBER<br>EAC-04-013-52765 | | CASE TYPE  I360   PETITION FOR AMERASIAN, WIDOWER,<br>OR SPECIAL IMMIGRANT |
|---|---|---|
| RECEIVED DATE<br>October 9, 2003 | PRIORITY DATE | PETITIONER<br>LISENKO, MARIANNE |
| NOTICE DATE<br>October 20, 2003 | PAGE<br>1 of 1 | BENEFICIARY  A97 649 034<br>LISENKO, MARIANNE |

MARIANNE LISENKO
59 NORTH STREET
WINOOSKI VT 05404

Notice Type:  Receipt Notice

Amount received:  $ 130.00

Section: Other

The above application or petition has been received. It usually takes 90 to 300 days from the date of this receipt for us to process this type of case. Please notify us immediately if any of the above information is incorrect.

We will send you a written notice as soon as we make a decision on this case. You can also use the phone number (800) 375-5283 to obtain case status information direct from our automated system 24 hours a day with a touch-tone phone and the receipt number for this case (at the top of this notice).

If you have other questions about possible immigration benefits and services, filing information, or Immigration and Naturalization Service forms, please call the INS National Customer Service Center (NCSC) at 1-800-375-5283. If you are hearing impaired, please call our TDD at 1-800-767-1833.

You can also visit the INS on the internet at www.bcis.gov. On our web site you can get up-to-date case status information on your case and find valuable information about immigration services and benefits.



Please see the additional information on the back. You will be notified separately about any other cases you filed.
IMMIGRATION & NATURALIZATION SERVICE
VERMONT SERVICE CENTER
75 LOWER WELDEN STREET
SAINT ALBANS VT 05479-0001
Customer Service Telephone: (800) 375-5283

Form I-797C

U.S. Department of Justice
Immigration and Naturalization Service
Case 1:15-cv-01048-RBW   Document 1   Filed 07/02/15   Page 72 of 81

Notice of Action

## THE UNITED STATES OF AMERICA

| RECEIPT NUMBER | CASE TYPE |
|---|---|
| EAC-04-013-52532 | I485   APPLICATION TO ADJUST TO PERMANENT RESIDENT STATUS |

| RECEIVED DATE | PRIORITY DATE | APPLICANT |
|---|---|---|
| October 9, 2003 | | A97 649 034 LISENKO, MARIANNE |

| NOTICE DATE | PAGE |
|---|---|
| October 20, 2003 | 1 of 1 |

MARIANNE LISENKO
C/O MARTIN & VIOLET CASEY
59 NORTH ST
WINOOSKI VT 05404

Notice Type:  Receipt Notice

Amount received: $  255.00

Section: Other basis for adjustment

The above application or petition has been received. It usually takes 365 to 540 days from the date of this receipt for us to process this type of case. Please notify us immediately if any of the above information is incorrect.

We will send you a written notice as soon as we make a decision on this case. You can also use the phone number (800) 375-5283 to obtain case status information direct from our automated system 24 hours a day with a touch-tone phone and the receipt number for this case (at the top of this notice).

If you have other questions about possible immigration benefits and services, filing information, or Immigration and Naturalization Service forms, please call the INS National Customer Service Center (NCSC) at 1-800-375-5283. If you are hearing impaired, please call our TDD at 1-800-767-1833.

You can also visit the INS on the internet at www.bcis.gov. On our web site you can get up-to-date case status information on your case and find valuable information about immigration services and benefits.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
IMMIGRATION & NATURALIZATION SERVICE
VERMONT SERVICE CENTER
75 LOWER WELDEN STREET
SAINT ALBANS VT 05479-0001
Customer Service Telephone: (800) 375-5283



Form I-797C

September 18, 2006

US Citizenship and Immigration Services
Portland District Director  LARA RODOLFO
176 Gannett Drive
South Portland, ME 04106

Subject:

## 1. MOTION TO RECONSIDER DECISION OF ST.ALBANS SERVICE CENTER
## 2. MOTION TO EXPEDITE ISSUANCE OF TRAVEL DOCUMENT

### RE: MARIANNE LISENKO,  A-097-649-034,

**1. Application for Employment Authorization, Form I-765**(renewal),
Receipt #EAC0608650803
(Previous approved EAD receipt #s EAC0401352546, EAC0510751243)

Pending Applications:
I-360 (Receipt # EAC0401352765)
I-130 (Receipt # EAC0619853109)
I-485 (Receipt # EAC0401352532)
I-589 -- on appeal with BIA
I-131 (Receipt #0521651138)

In support of this request for reconsideration I am enclosing  a copy of the St.Albans
Service Center Deputy Director Sandra Bushey's explanation of the reasons for rejecting
my Application for Employment Authorization.

I believe you  will agree that the regulations cited and the calculations given are
objectionable.  In par.2 on page 2 Sandra Bushey states that I "caused a delay in the
processing of the  Application on August 2, 2005, thereby postponing the completion of
the 150-day period"  and that "As of the date Form I-589 was denied, 69 active
processing days had elapsed".

I did not cause any delays and it was Judge Shapiro and DHS attorney Brennan who
postponed my hearing from August 2nd to December 19, 2005. Unexpectedly, a decision
was written dated September 6th, 2006. From May 24 to September 6th 105 days passed.
From May, 24 2005 to January 31, 2006, the date when CIS received my third
Application for Employment Authorization, well over 200 days had passed.  It would be
nice to know how Sandra Bushey came up with "69 elapsed days" and what  does pg.2
of her explanation exactly mean?  It appears deliberately absurd and I can only conclude
that it was  meant to ridicule either me, or the regulation, or both - me and the regulation.





1 of 3

Regardless of how many days elapsed, the decision is on appeal and it is a general rule of law (included further in that same regulation) that an appeal does not terminate a proceeding, or the 150 day count, however absurd and contradictory to international law that "count" may be to begin with.

There is also the fact that Sandra Bushey was aware that two Employment Authorization Cards were previously issued to me on the basis of my pending I-360 and I-485 applications. She also had to know that I have a sister who resides in the state of New York and she could have used her discretion to correct the eligibility designation to "(c)(9)". The enclosed print-out of the status of my I-360 petition states that USCIS motioned to re-open that Application. This happened after I filed an Appeal with the Administrative Appeals Unit and it speaks of a very high level of discretionary power.

But not having received any help from Vermont's "Women Helping Battered Women", I am not surprised that Sandra Bushey too might be a woman who decides against helping another woman and thus, she caused me more emotional pain and financial losses.

I have been told that almost everyone in a position of authority in Vermont is interconnected. It is therefore my suspicion that Quebec and Vermont politicians might be colluding in order to disrupt my pursuit for justice for myself (with the help of the US government) and for other non-constitutional minorities throughout Canada and Quebec, from where I fled.


## 2. Application for a Travel Document, Form I-131 (receipt EAC0521651138)

My request to expedite the issuance of a travel document is justified by the fact that I have basic eligibility for US status and because I have raised issues of public importance in appeals to the BIA and in the 2nd Circuit Court of Appeals.

Among those issues is the fundamental human need to maintain a relationship with my family, especially my very vulnerable son, and with other relatives and friends who are in Canada. It is my duty to give my elderly mother at least periodic companionship and assistance. There is also the fact that humane civilized communities should not be fencing themselves in – whether it be with linguistic or other supremacist laws, with barbed-wire or difficult to obtain border passes and employment authorizations.

I believe the unusual individual aspects of my case also requires the demonstration of the fact that the principles of freedom and rule of law, for which the USA stands, are respected. It is in the interest of public confidence in the integrity and honesty of the US government to give me the freedom of movement which I deserve and for which I am eligible. This would be in contrast to the handling by Quebec and Canadian authorities of complaints of abuses perpetrated against me and members of my family.

61

I DECLARE UNDER THE PAINS AND PENALTIES OF PERJURY THAT ALL THE ABOVE-GIVEN INFORMATION IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, SO HELP ME GOD, AND I PRAY THAT MY REQUESTS WILL BE GRANTED.


Signed in Burlington, Vermont, on September 18, 2006

MARIANNE LISENKO


833 Queen City Pk Rd #15
S.Burlington, VT 05403


Enclosures:
1.CIS Letter of March 7, 2006 signed by Sandra Bushey
2. 4 Case Status Reports dated 9/16/2006
3.Copy of US Court of Appeals ruling on Motions.. dated August 10, 2006
4. Copy of filing receipt from BIA dated June 13, 2006
5. Copy of BIA Notice of Briefing Schedule and Brief which was submitted within delay (no Reply from DHS was received, nor was receipt of my Brief acknowledged by BIA)
6. 2 recent passport-sized photos


Copies with selected enclosures to:

US CIS
Paul Novak, Director
75 Lower Welden Street
St.Albans, VT 05479

US CIS
P.O.Box 805887
Chicago, IL 60680-4120

US CIS
P.O.Box 87765
Lincoln, NE 68501-7765

62

## Chronology

**1882 Chinese Exclusion Act** — Barred the entry of any Chinese for 10 years, made permanent in 1904 until it was rescinded in 1943.

**1907 Gentlemen's Agreement** — Barred the entry of Japanese and Koreans.

**1917 Immigration Act** — Passed over President Wilson's veto, it established a literacy test and created the "Asiatic Barred Zone," virtually prohibiting immigration from Asia.

**1921 Quota Act (Johnson Act)** — Set the first immigration quotas in the nation's history, equal to 3 percent of the foreign born of admissible nationality in the 1910 census. There was still no limit on immigration from the Western Hemisphere.

**1924 Immigration Act (Johnson-Reid Act)** — Set an annual ceiling of 154,227 for the Eastern Hemisphere. Each country had a quota representative of its population in the U.S. as of the 1920 census.

**1952 Immigration and Nationality Act (McCarran-Walter Act)** — Passed over President Truman's veto, it reaffirmed the basic provisions of the national origins quota system, and the annual ceiling remained 154,277. It abolished immigration and naturalization exclusions against Asians and allotted 100 visas for each Asian country. In addition, the act instituted a system to give preference (within the national origins quotas) to foreigners with education or skills, as well as relatives — this was the predecessor of today's preference system. Immigration from Latin America and the Caribbean remained exempt from numerical limits.

**1965 Amendments to Immigration and Nationality Act (Hart-Celler Act)** — See "Details" section of this paper.

**1976 Amendments to Immigration and Nationality Act** — Extended a version of the seven-category preference system previously applied to Eastern Hemisphere countries to all Western Hemisphere countries. Also imposed an annual ceiling of 20,000 immigrants from any one country in the Western Hemisphere.

**1978 Amendments to Immigration and Nationality Act** — The two hemispheric ceilings were combined into a worldwide quota of 290,000. The U.S. now had a policy that, on paper, applied uniformly to the people of all countries.

**1980 Refugee Act** — Established a separate admissions policy for refugees, eliminating the previous geographical and ideological criteria, and defining "refugee" according to United Nations norms. It abolished the seventh preference category for refugees (see Details). It set a separate target for refugees at 50,000 and reduced the annual worldwide ceiling for immigrants to 270,000.

**1981 Report of the Select Commission on Immigration and Refugee Policy** — The 16-member commission was created by Congress to evaluate immigration and refugee laws, policies, and procedures. The Commission's recommendations were summed up as follows by its chairman, the Rev. Theodore Hesburgh: "We recommend closing the back door to undocumented, illegal migration, opening the front door a little more to accommodate legal migration in the interests of this country, defining our immigration goals clearly and providing a structure to implement them effectively, and setting forth procedures which will lead to fair and efficient adjudication and administration of U.S. immigration laws."

**1986 Immigration Reform and Control Act (IRCA)** — Tried to control and deter illegal immigration by providing amnesty and temporary status to all illegal aliens who had lived in the United States continuously since before January 1, 1982; extended a separate, more lenient amnesty to farmworkers; imposed sanctions on employers who knowingly hire illegal aliens; increased inspection and enforcement at U.S. borders.

**1990 Immigration Act (IMMACT)** — Modified and expanded the 1965 act; it significantly increased the total level of immigration to 700,000, increasing available visas 40 percent. The act retained family reunification as the major entry path, while more than doubling employment-related immigration. The law also provided for the admission of immigrants from "underrepresented" countries to increase the diversity of the immigrant flow

***

*Contacts*

63

'86 .

*ith Finland".*

America in 1638
e colony of New

*uropean civiliza-*

either natives of

existed in what
ew Jersey, Mary-

ed culture in the

signatory of the
a, were born in

nish descent are

nish descent to
been continuous

0th anniversary
y officials of the
States;
formally invited
ivities in 1988
eden; and
Finland and the
ted: Now, there-

*es of the United*
s designated the
he President of
sue a proclama-
to observe such

Public Law 99-603
99th Congress

## An Act

To amend the Immigration and Nationality Act to revise and reform the immigration
laws, and for other purposes.

Nov. 6, 1986
[S. 1200]

*Be it enacted by the Senate and House of Representatives of the
United States of America in Congress assembled,*

SECTION 1. SHORT TITLE; REFERENCES IN ACT.

(a) SHORT TITLE.—This Act may be cited as the "Immigration
Reform and Control Act of 1986".

(b) AMENDMENTS TO IMMIGRATION AND NATIONALITY ACT.—Except
as otherwise specifically provided in this Act, whenever in this Act
an amendment or repeal is expressed as an amendment to, or repeal
of, a provision, the reference shall be deemed to be made to the
Immigration and Nationality Act.

Immigration
Reform and
Control Act of
1986.
8 USC 1101 note.

## TABLE OF CONTENTS

Sec. 1. Short title; references in Act.

### TITLE I—CONTROL OF ILLEGAL IMMIGRATION

PART A—EMPLOYMENT

Sec. 101. Control of unlawful employment of aliens.
Sec. 102. Unfair immigration-related employment practices.
Sec. 103. Fraud and misuse of certain immigration-related documents.

PART B—IMPROVEMENT OF ENFORCEMENT AND SERVICES

Sec. 111. Authorization of appropriations for enforcement and service activities of
the Immigration and Naturalization Service.
Sec. 112. Unlawful transportation of aliens to the United States.
Sec. 113. Immigration emergency fund.
Sec. 114. Liability of owners and operators of international bridges and toll roads to
prevent the unauthorized landing of aliens.
Sec. 115. Enforcement of the immigration laws of the United States.
Sec. 116. Restricting warrantless entry in the case of outdoor agricultural
operations.
Sec. 117. Restrictions on adjustment of status.

PART C—VERIFICATION OF STATUS UNDER CERTAIN PROGRAMS

Sec. 121. Verification of immigration status of aliens applying for benefits under
certain programs.

### TITLE II—LEGALIZATION

Sec. 201. Legalization of status.
Sec. 202. Cuban-Haitian adjustment.
Sec. 203. Updating registry date to January 1, 1972.
Sec. 204. State legalization impact-assistance grants.

### TITLE III—REFORM OF LEGAL IMMIGRATION

PART A—TEMPORARY AGRICULTURAL WORKERS

Sec. 301. H-2A agricultural workers.
Sec. 302. Permanent residence for certain special agricultural workers.
Sec. 303. Determinations of agricultural labor shortages and admission of addi-
tional special agricultural workers.
Sec. 304. Commission on Agricultural Workers.

64

unity to submit
ctory immigra-

terminate the
r the program
igration status
been provided;

hich the State
indicating such

migration and
other similar
fication,
State may not
ividual's eligi-
the basis of the

for the con-
e of the Service

ith the require-
al is not in a
ble program—
he individual's
d
shall be made

istration of a
ny compliance,
gainst a State
on to make an
r immigration

ty based on a
the Immigra-

)(4)(A)(ii), was
ty to submit

)(4)(B)(ii), was
tion and Natu-
ial verification

l in subsection

tion 214 of the
980 (42 U.S.C.
following new

inancial assist-

by the individ-
by another on
rjury, stating
ational of the

United States, and, if that individual is not a citizen or national
of the United States, that the individual is in a satisfactory
immigration status.

   "(B) In this subsection, the term 'satisfactory immigration
status' means an immigration status which does not make the
individual ineligible for financial assistance.

   "(2) If such an individual is not a citizen or national of the
United States, there must be presented either—

      "(A) alien registration documentation or other proof of
   immigration registration from the Immigration and Natu-
   ralization Service that contains the individual's alien
   admission number or alien file number (or numbers if the
   individual has more than one number), or

      "(B) such other documents as the Secretary determines
   constitutes reasonable evidence indicating a satisfactory
   immigration status.

   "(3) If the documentation described in paragraph (2)(A) is
presented, the Secretary shall utilize the individual's alien file
or alien admission number to verify with the Immigration and
Naturalization Service the individual's immigration status
through an automated or other system (designated by the Serv-
ice for use with States) that—

      "(A) utilizes the individual's name, file number, admis-
   sion number, or other means permitting efficient verifica-
   tion, and

      "(B) protects the individual's privacy to the maximum
   degree possible.

   "(4) In the case of such an individual who is not a citizen or
national of the United States, if, at the time of application for
financial assistance, the statement described in paragraph (1) is
submitted but the documentation required under paragraph (2)
is not presented or if the documentation required under para-
graph (2)(A) is presented but such documentation is not verified
under paragraph (3)—

      "(A) the Secretary—

         "(i) shall provide a reasonable opportunity to submit
      to the Secretary evidence indicating a satisfactory
      immigration status, and

         "(ii) may not delay, deny, reduce, or terminate the
      individual's eligibility for financial assistance on the
      basis of the individual's immigration status until such
      a reasonable opportunity has been provided; and

      "(B) if there are submitted documents which the Sec-
   retary determines constitutes reasonable evidence indicat-
   ing such status—

         "(i) the Secretary shall transmit to the Immigration
      and Naturalization Service photostatic or other similar
      copies of such documents for official verification,

         "(ii) pending such verification, the Secretary may not
      delay, deny, reduce, or terminate the individual's eligi-
      bility for financial assistance on the basis of the
      individual's immigration status, and

         "(iii) the Secretary shall not be liable for the con-
      sequences of any action, delay, or failure of the Service
      to conduct such verification.

65

I.L.
RR

KF 62
2012
v. 4
title 8
- title
10
sect.
1414
Copy 7

# United States Code

## 2012 Edition

TITLE 8—ALIENS AND NATIONALITY

TO

TITLE 10—ARMED FORCES

§§ 101–1414

PROPERTY OF THE U.S. GOVERNMENT

§1101                   TITLE 8—ALIENS AND NATIONALITY                   Page 28

provide the alien with an "employment authorized" endorsement or other appropriate work permit.

(June 27, 1952, ch. 477, title I, §101, 66 Stat. 166; Pub. L. 85–316, §§1, 2, Sept. 11, 1957, 71 Stat. 639; Pub. L. 85–508, §22, July 7, 1958, 72 Stat. 351; Pub. L. 86–3, §20(a), Mar. 18, 1959, 73 Stat. 13; Pub. L. 87–256, §109(a), (b), Sept. 21, 1961, 75 Stat. 534; Pub. L. 87–301, §§1, 2, 7, Sept. 26, 1961, 75 Stat. 650, 653; Pub. L. 89–236, §§8, 24, Oct. 3, 1965, 79 Stat. 916, 922; Pub. L. 89–710, Nov. 2, 1966, 80 Stat. 1104; Pub. L. 91–225, §1, Apr. 7, 1970, 84 Stat. 116; Pub. L. 94–155, Dec. 16, 1975, 89 Stat. 824; Pub. L. 94–484, title VI, §601(b), (e), Oct. 12, 1976, 90 Stat. 2301, 2302; Pub. L. 94–571, §7(a), Oct. 20, 1976, 90 Stat. 2706; Pub. L. 94–484, title VII, §602(c), Oct. 12, 1976, as added Pub. L. 95–83, title III, §307(c)(3), Aug. 1, 1977, 91 Stat. 395; Pub. L. 95–105, title I, §109(b)(3), Aug. 17, 1977, 91 Stat. 847; Pub. L. 96–70, title III, §3201(a), Sept. 27, 1979, 93 Stat. 496; Pub. L. 96–212, title II, §201(a), Mar. 17, 1980, 94 Stat. 102; Pub. L. 97–116, §§2, 5(d)(1), 18(a), Dec. 29, 1981, 95 Stat. 1611, 1614, 1619; Priv. L. 98–47, §3, Oct. 30, 1984, 98 Stat. 3435; Pub. L. 99–505, §1, Oct. 21, 1986, 100 Stat. 1806; Pub. L. 99–603, title III, §301(a), 312, 315(a), Nov. 6, 1986, 100 Stat. 3411, 3434, 3439; Pub. L. 99–653, §§2, 3, Nov. 14, 1986, 100 Stat. 3655; Pub. L. 100–459, title II, §210(a), Oct. 1, 1988, 102 Stat. 2203; Pub. L. 100–525, §§2(o)(1), 8(b), 9(a), Oct. 24, 1988, 102 Stat. 2613, 2617, 2619; Pub. L. 100–690, title VII, §7342, Nov. 18, 1988, 102 Stat. 4469; Pub. L. 101–162, title VI, §611(a), Nov. 21, 1989, 103 Stat. 1038; Pub. L. 101–238, §3(a), Dec. 18, 1989, 103 Stat. 2100; Pub. L. 101–246, title I, §131(b), Feb. 16, 1990, 104 Stat. 31; Pub. L. 101–649, title I, §§123, 151(a), 153(a), 162(f)(2)(A), title II, §§203(c), 204(a), (c), 205(c)(1), (d), (e), 206(c), 207(a), 208, 209(a), title IV, §407(a)(2), title V, §501(a), 509(a), title VI, §603(a)(1), Nov. 29, 1990, 104 Stat. 4995, 5004, 5005, 5012, 5018–5020, 5022, 5023, 5026, 5027, 5040, 5048, 5051, 5082; Pub. L. 102–110, §2(a), Oct. 1, 1991, 105 Stat. 555; Pub. L. 102–232, title II, §§203(a), 205(a)–(c), 206(b), (c)(1), (d), 207(b), title III, §§302(e)(8)(A), 303(a)(5)(A), (7)(A), (14), 305(m)(1), 306(a)(1), 309(b)(1), (4), Dec. 12, 1991, 105 Stat. 1737, 1740, 1741, 1746–1748, 1750, 1751, 1758; Pub. L. 103–236, title I, §162(b)(1), Apr. 30, 1994, 108 Stat. 407; Pub. L. 103–322, title XIII, §130003(a), Sept. 13, 1994, 108 Stat. 2024; Pub. L. 103–337, div. C, title XXXVI, §3605, Oct. 5, 1994, 108 Stat. 3113; Pub. L. 103–416, title II, §§201, 202, 214, 219(a), 222(a), Oct. 25, 1994, 108 Stat. 4310, 4311, 4314, 4316, 4320; Pub. L. 104–51, §1, Nov. 15, 1995, 109 Stat. 467; Pub. L. 104–132, title IV, §440(b), (e), Apr. 24, 1996, 110 Stat. 1277; Pub. L. 104–208, div. C, title I, §104(a), title III, §§301(a), 308(d)(3)(A), (4)(A), (e)(3), (f)(1)(A), (B), 321(a), (b), 322(a)(1), (2)(A), 361(a), 371(a), title VI, §§601(a)(1), 625(a)(2), 671(a)(3)(B), (b)(5), (e)(2), Sept. 30, 1996, 110 Stat. 3009–555, 3009–575, 3009–617, 3009–620, 3009–627 to 3009–629, 3009–644, 3009–645, 3009–689, 3009–700, 3009–721 to 3009–723; Pub. L. 105–54, §1(a), Oct. 6, 1997, 111 Stat. 1175; Pub. L. 105–119, title I, §113, Nov. 26, 1997, 111 Stat. 2460; Pub. L. 105–277, div. C, title IV, §421, div. G, title XXII, §2222(a), Oct. 21, 1998, 112 Stat. 2681–657, 2681–819; Pub. L. 105–319, §2(b)(1), (e)(2), formerly (d)(2), Oct. 30, 1998, 112 Stat. 3014, 3015, renumbered §2(e)(2), Pub. L. 108–449, §1(a)(3)(A), Dec. 10, 2004, 118 Stat. 3470; Pub. L. 106–95, §2(a), (c), Nov. 12,

1999, 113 Stat. 1312, 1316; Pub. L. 106–139, §1(a), (b)(1), Dec. 7, 1999, 113 Stat. 1696; Pub. L. 106–279, title III, §302(a), (c), Oct. 6, 2000, 114 Stat. 838, 839; Pub. L. 106–386, div. A, §107(e)(1), (4), div. B, title V, §§1503(a), §1513(b), Oct. 28, 2000, 114 Stat. 1477, 1479, 1518, 1534; Pub. L. 106–395, title II, §201(a)(1), Oct. 30, 2000, 114 Stat. 1633; Pub. L. 106–409, §2(a), Nov. 1, 2000, 114 Stat. 1787; Pub. L. 106–536, §1(a), Nov. 22, 2000, 114 Stat. 2560; Pub. L. 106–553, §1(a)(2) [title XI, §§1102(a), 1103(a)], Dec. 21, 2000, 114 Stat. 2762, 2762A–142, 2762A–144; Pub. L. 107–125, §2(b), Jan. 16, 2002, 115 Stat. 2403; Pub. L. 107–274, §2(a), (b), Nov. 2, 2002, 116 Stat. 1923; Pub. L. 108–77, title IV, §402(a)(1), Sept. 3, 2003, 117 Stat. 939; Pub. L. 108–99, §1, Oct. 15, 2003, 117 Stat. 1176; Pub. L. 108–193, §§4(b)(1), (5), 8(a)(1), Dec. 19, 2003, 117 Stat. 2878, 2879, 2886; Pub. L. 108–449, §1(a)(2)(B), (b)(1), Nov. 24, 2004, 118 Stat. 3469, 3470; Pub. L. 108–458, title V, §5504, Dec. 17, 2004, 118 Stat. 3741; Pub. L. 109–13, div. B, title V, §501(a), May 11, 2005, 119 Stat. 321; Pub. L. 109–90, title V, §536, Oct. 18, 2005, 119 Stat. 2087; Pub. L. 109–162, title VIII, §§801, 805(d), 811, 822(c)(1), Jan. 5, 2006, 119 Stat. 3053, 3056, 3057, 3063; Pub. L. 109–248, title IV, §402(b), July 27, 2006, 120 Stat. 623; Pub. L. 110–229, title VII, §702(j)(1)–(3), May 8, 2008, 122 Stat. 866; Pub. L. 110–391, §2(a), Oct. 10, 2008, 122 Stat. 4193; Pub. L. 110–457, title II, §201(a), 235(d)(1), Dec. 23, 2008, 122 Stat. 5052, 5079; Pub. L. 111–9, §1, Mar. 20, 2009, 123 Stat. 989; Pub. L. 111–83, title V, §568(a)(1), Oct. 28, 2009, 123 Stat. 2186; Pub. L. 111–287, §3, Nov. 30, 2010, 124 Stat. 3058; Pub. L. 111–306, §1(a), Dec. 14, 2010, 124 Stat. 3280; Pub. L. 112–176, §3, Sept. 28, 2012, 126 Stat. 1325.)

### AMENDMENT OF SUBSECTION (a)(15)(H)(i)

*For termination of amendment by section 107(c) of Pub. L. 108–77, see Effective and Termination Dates of 2003 Amendment note below.*

### REFERENCES IN TEXT

This chapter, referred to in subsecs. (a), (b) (except par. (1)(G)(ii)), (c), and (e)–(g), was in the original, "this Act", meaning act June 27, 1952, ch. 477, 66 Stat. 163, known as the Immigration and Nationality Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out below and Tables.

The Headquarters Agreement with the United Nations (61 Stat. 758), referred to in subsec. (a)(15)(C), is set out as a note under section 287 of Title 22, Foreign Relations and Intercourse.

Section 1184(l) of this title, referred to in subsec. (a)(15)(F)(i), probably means the subsec. (l) of section 1184 which relates to nonimmigrant elementary and secondary school students and was added by Pub. L. 104–208, div. C, title VI, §625(a)(1), Sept. 30, 1996, 110 Stat. 3009–699, and redesignated subsec. (m) of section 1184 by Pub. L. 106–386, div. A, §107(e)(2)(A), Oct. 28, 2000, 114 Stat. 1478.

The International Organizations Immunities Act (59 Stat. 669), referred to in subsec. (a)(15)(G)(i), is act Dec. 29, 1945, ch. 652, title I, 59 Stat. 669, which is classified principally to subchapter XVIII (§288 et seq.) of chapter 7 of Title 22, Foreign Relations and Intercourse. For complete classification of this Act to the Code, see Short Title note set out under section 288 of Title 22 and Tables.

Subsection (p) of section 1184 of this title, referred to in subsec. (a)(15)(K), was redesignated subsec. (r) of section 1184 by Pub. L. 108–193, §8(a)(3), Dec. 19, 2003, 117 Stat. 2886.

Section 3(a) of the Selective Training and Service Act of 1940, as amended (54 Stat. 885; 55 Stat. 844), referred

[right column partially cut off]

to in r
Title 50
omitted

The 1
sec. (a
Trainin
75, and
ice Exc
Stat. 1
Selecti
§101(a)

The 1
referred
Oct. 24
of this
ments :

The 1
tions A
(a)(27)(
1998, 11
this Ac
ment n

Sectio
tion F
(a)(51)(
§902(d)
1255 of

Sectio
Central
(a)(51)(
set out

Sectio
Immigr
subsec.
104–208
Sectio
was req
2000, 11

Septe
visions
of enac
as mea
Pub. L.
the prol

2012—
substitu
2012".
2010—
substitu
Subse
(52).
Subse
general
that th
from ce
adopted
tain cri
2009—
stituted
2009,".
Pub.
"March
2008—
inserted
ana Isla
Subse
stituted
General
jointly;
Subse
substitu

(ii) by inserting "and" at the end of paragraph (2);

(B) by striking paragraph (3); and

(C) by redesignating paragraph (4) as paragraph (3).

(c) SUBSTITUTION OF APPLICATION FOR NATURALIZATION FOR PETITION FOR NATURALIZATION.—The text of the following provisions is amended by striking "a petition", "petition", "petitions", "a petitioner", "petitioner", "petitioner's", "petitioning", and "petitioned" each place it appears and inserting "an application", "application", "applications" or "applies" (as the case may be), "an applicant", "applicant", "applicant's", "applying", and "applied", respectively:

(1) Section 313(c) (8 U.S.C. 1424(c)).

(2) Section 316 (8 U.S.C. 1427).

(3) Section 317 (8 U.S.C. 1428).

(4) Section 318 (8 U.S.C. 1429).

(5) Sections 319 (a) and (c) (8 U.S.C. 1430 (a), (c)).

(6) Section 322 (8 U.S.C. 1433).

(7) Section 324 (8 U.S.C. 324).

(8) Section 325 (8 U.S.C. 1436).

(9) Section 326 (8 U.S.C. 1437).

(10) Section 328 (8 U.S.C. 1439).

(11) Section 329 (8 U.S.C. 1440), other than subsection (d).

(12) Section 330 (8 U.S.C. 1441).

(13) Section 331 (8 U.S.C. 1442), other than subsection (d).

(14) Section 333(a) (8 U.S.C. 1444(a)).

(15) Section 334 (8 U.S.C. 1445).

(16) Section 335 (8 U.S.C. 1446).

(17) Section 336 (8 U.S.C. 1447).

(18) Section 337 (8 U.S.C. 1448).

(19) Section 338 (8 U.S.C. 1449).

(20) Section 344 (8 U.S.C. 1455).

(21) Section 1429 of title 18, United States Code.

8 USC 1435.

(d) SUBSTITUTING APPROPRIATE ADMINISTRATIVE AUTHORITY FOR NATURALIZATION COURT.—(1) Section 316 (8 U.S.C. 1427) is amended—

(A) in subsection (b), by striking "the court" each place it appears and inserting "the Attorney General",

(B) in subsection (b), by striking "date of final hearing" and inserting "date of any hearing under section 336(a)",

(C) in subsection (e), by striking "the court" and inserting "the Attorney General",

(D) in subsection (g)(1), by striking "within the jurisdiction of the court" and inserting "within a particular State or district of the Service in the United States", and

(E) in subsection (g)(2), by amending the first sentence to read as follows: "An applicant for naturalization under this subsection may be administered the oath of allegiance under section 337(a) by any district court of the United States, without regard to the residence of the applicant.".

(2) The second sentence of section 317 (8 U.S.C. 1428) is amended by striking "and the naturalization court".

(3) The third sentence of section 318 (8 U.S.C. 1429) is amended—

(A) by striking "finally heard by a naturalization court" and inserting "considered by the Attorney General", and

(B) by striking "upon the naturalization court" and inserting "upon the Attorney General".

(4) Section 319 (8 U.S.C. 1430) is amended—

Immigration Act of 1990

68